**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| GEN-PROBE INCORPORATED, | ) | Civil No. 09cv2319 BEN (NLS) |
| Plaintiff, | ) | |
| v. | ) | **ORDER GRANTING IN PART JOINT MOTION FOR PROTECTIVE ORDER AND DETERMINING PARTIES' DISPUTE REGARDING ISSUE NO. 1 IN THE PROTECTIVE ORDER** |
| BECTON, DICKINSON AND COMPANY, | ) | |
| Defendant. | ) | |
| | ) | [Doc. No. 27] |
| BECTON, DICKINSON AND COMPANY, | ) | |
| Counterclaimant, | ) | |
| v. | ) | |
| GEN-PROBE INCORPORATED, | ) | |
| Counterdefendant. | ) | |

Plaintiff Gen-Probe, Inc. (Gen-Probe) develops and sells nucleic acid tests and corresponding equipment used to detect disease-causing microorganisms and to screen donated human blood. Compl. ¶ 1. Through use of its patented technology, the TIGRIS® System, Gen-Probe fully automated the process for blood screening. Compl. ¶ 4. Gen-Probe alleges that defendant Becton, Dickinson and Company (BD) and its "BD Viper™ with XTR™ Technology" nucleic acid testing system infringes U.S. Patent Nos. 7,560,256 ('256 patent), 7,560,255 ('255 patent), 7,524,652 ('652 patent), 7,482,143 ('143 patent), 7,118,892 ('892 patent) and 5,612,200 ('200 patent). Compl. ¶¶ 7-12, 16-39. It also alleges that BD's "BD ProbeTec™" DNA Assays infringe U.S. Patent Nos. 7,294,308 ('308 patent) and

6,893,612 ('612 patent). Compl. ¶¶ 13-14, 40-47. BD asserts counterclaims for declaratory judgment of invalidity against Gen-Probe's eight asserted patents.

The court held a Case Management Conference (CMC) on February 26, 2010. Following the CMC the court issued several rulings regarding scheduling and the parameters for discovery. It also ordered counsel to meet and confer regarding a joint proposed protective order to govern the production of documents in this case. Because the parties could not agree to all terms in the protective order, they filed this joint motion asking the court to determine two disputed terms in the protective order.

On March 11, 2010, the court issued an order explaining it had sufficient information before it to determine the first issue presented in the joint motion. It set a schedule for further briefing of the second issue. The court will determine the second issue in a later order.

For good cause shown, the court **GRANTS in part** the joint motion and determines the first issue raised in the proposed protective order.

**Issue #1: Restrictions on Information that May be Designated "Highly Confidential" Under the Protective Order.**

The parties disagree on how to define "Highly Confidential" information. They each propose distinct language for subsection (d). Further, BD seeks to include the bold and highlighted language below in subsections (b), (c), and (e) while Gen-Probe objects to its inclusion.

> 4 (B). <u>Designation as "HIGHLY CONFIDENTIAL"</u>: Any producing party may designate information as "HIGHLY CONFIDENTIAL" only if, in the good faith belief of such party and its outside counsel, disclosure of the information to another party is likely to cause competitive harm to the disclosing party, and embodies, contains or reflects:
>
> (a)   confidential commercial contracts and licenses with a third party, including documents relating thereto;
>
> (b)   highly sensitive plans for future marketing or future commercialization *created after January 1, 2002*;
>
> (c)   highly sensitive financial or competitive information *created after January 1, 2002*;
>
> (d)   *Gen-Probe's proposal:* trade secret information reflecting *nucleic acid sequence or chemistry information, source code, or manufacturing procedures*; or
>
> (d)   *BD's proposal:* trade secret information reflecting *the nucleic acid sequence of molecular diagnostic probe products of the producing party currently available or in development*; or

(e)   other trade secret or other confidential information *created after January 1, 2002* that concerns any product design, research, development, testing, manufacturing or other product information.

### A.   Subsection (d).

Gen-Probe's proposed categories for subsection (d) appear more inclusive than those in BD's proposal. The parties did not argue their differences in the joint motion. BD, however, noted that regarding source code--which Gen-Probe includes in its category of items protected as "Highly Confidential" information in subsection (d)--"the parties have agreed to address [that issue] separately, if production of such code becomes necessary." Jt. Mtn, p.11.

Based on the information before it, the court adopts Gen-Probe's proposed language for subsection (d). Without any briefing on the issue, the court errs on the side of caution and adopts Gen-Probe's proposed language because it appears more inclusive that BD's proposed language. BD is not without recourse, though, because at a minimum, through other provisions in the protective order, the parties have a means to object to the designation of information as "Highly Confidential." Further, because the parties did not brief the issue and have agreed to address it at a later time if such production becomes necessary, the determination of subsection (d) is without prejudice to either party filing a motion to seek to amend it.

### B.   January 1, 2002 Cutoff Date for "Highly Confidential" Information.

At issue is whether any documents or information created before January 1, 2002 should be conclusively determined to *not* constitute "Highly Confidential" information. BD seeks to include the time limitation while Gen-Probe objects to it. Under BD's proposal, any documents or information created before January 1, 2002 could, at most, be designated "Confidential." According to the protective order, "Confidential" information can be examined by up to five party employees while "Highly Confidential" information can only be examined by outside counsel who are not competitive decision makers.

Gen-Probe argues that if the court adopts BD's cutoff date, documents that contain Gen-Probe's highly sensitive trade secret, financial or other competitive information, if created before January 1, 2002, would be available to BD's competitive decision makers. Gen-Probe states that some of its most highly sensitive information--some of which dates back over a decade and which is relevant to its

ongoing research, development and manufacturing activities--would be exposed without protection. Gen-Probe says it would be placed at substantial risk of irreparable harm.

BD argues that its proposal seeks to balance the parties' confidentiality concerns with the need for client representatives to evaluate claims and formulate strategy in this litigation. There are carve-outs in BD's proposal, such that certain categories of information, such as licensing agreements and proprietary nucleic acid sequences, would be protected regardless of their date of creation. BD argues that in the technological world, product, marketing and competitive market information more than eight years old would likely not serve any competitive value to either party. BD also argues that by including the cutoff date, client representatives will be allowed to assess claims regarding development activity from the late 1990's to early 2000's. BD finally argues that without the January 1, 2002 cutoff date, Gen-Probe's proposal lacks any standard and is so broad that virtually all materials can be designated as "Highly Confidential."

The court has considered both parties' arguments and adopts Gen-Probe's proposed language. The court will not impose the January 1, 2002 cutoff date for "Highly Confidential" information. First, the contents of the document, rather than its date of creation, should determine the risk of competitive harm if disclosed to BD employees. Second, the dissemination of this information to BD's competitive decision makers would unfairly prejudice Gen-Probe. BD is a company with revenues over 14 times greater than Gen-Probe's. BD directly competes with Gen-Probe and they both actively prosecute patents in the field of molecular diagnostic tests and instruments. Based on information provided by Gen-Probe (BD did not address the issue), at least two of the five potential in-house reviewers of "Confidential" information for BD appear to be involved in the prosecution of BD's patent applications. Those involved in patent prosecution may be considered competitive decision makers. *See Presidio Components, Inc. v. American Tech. Ceramics Corp.*, 546 F. Supp. 2d 951, 955-959 (S.D. Cal. 2008). Those competitive decision makers should be barred from accessing a party's most confidential information. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Finally, no evidence or argument presented leads the court to believe that by excluding the cutoff date, all BD's information will be swallowed by the "Highly Confidential" designation. At the time of filing this joint motion, Gen-Probe anticipated producing more than 20,000 "Confidential" documents

totaling over 130,000 pages. Further, if the parties disagree about a particular document that is designated as "Highly Confidential," the protective order provides a procedure to address that issue between the parties, and then to the court, if necessary. Given the rationale to support the adoption of Gen-Probe's proposed language, and the available procedures for de-designation of information marked "Highly Confidential," BD will not be prejudiced by the adoption of Gen-Probe's proposed term.

For good cause shown, the court **GRANTS** Gen-Probe's request to enter its proposed term for paragraph no. 4(B) of the protective order.

**IT IS SO ORDERED.**

DATED: March 15, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court