LATHAM & WATKINS LLP
Stephen P. Swinton (Bar No. 106398)
steve.swinton@lw.com
Alexander E. Long (Bar No. 216634)
alex.long@lw.com
12636 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone:    (858) 523-5400
Facsimile:    (858) 523-5450

LATHAM & WATKINS LLP
Dean G. Dunlavey (Bar No. 115530)
dean.dunlavey@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Telephone:    (714) 540-1235
Facsimile:    (714) 755-8290

Attorneys for Plaintiff
GEN-PROBE INCORPORATED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEN-PROBE INCORPORATED,<br><br>    Plaintiff,<br><br>    v.<br><br>BECTON, DICKINSON AND COMPANY,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 09-CV-2319 BEN (NLS)<br><br>**GEN-PROBE INCORPORATED'S REPLY BRIEF FILED IN RESPONSE TO THE MARCH 11, 2010 COURT ORDER REQUIRING FURTHER BRIEFING ON ISSUE NO. 2** |

## I. SUMMARY OF ARGUMENT

This case pits Gen-Probe against a much larger, direct competitor in a market in which smaller entities like Gen-Probe rely heavily on their highly guarded trade secrets and confidential information to maintain their competitive positions. With undisputed evidence that Becton, Dickinson and Company ("BD") has already copied Gen-Probe's patents, Gen-Probe has reasonably requested that this Court follow its published precedent and the majority position to impose a "prosecution bar" that will provide BD's outside counsel a simple choice: either prosecute patents in the technology area or litigate the patents at issue, but not both.

In its opposition, BD concedes that its law firms employ individuals who are engaged in prosecuting patent applications in the Technology Area – both for BD and for other clients in the molecular diagnostics business. BD also concedes that prosecuting patent applications gives rise to ethical obligations to clients, and those obligations can result in an individual being unable to represent competitors. BD further concedes that Gen-Probe's proposed "ethical wall" procedures can be implemented without difficulty. And, BD also concedes that none of its principal trial counsel – Mr. Ware and Ms. Fiacco from Foley Hoag – or its principal local counsel – Mr. Zelkind from Knobbe Martens – prosecute patents or materially assist others in the prosecution of patents. Thus, none of them would be adversely affected or unduly constrained by the prosecution bar.

However, rather than agree to Gen-Probe's proposed prosecution bar – or even comply with the Court's Order of disclosure, BD's opposition distorts and misstates both the facts and the law. For example, BD argues that: (1) the Court has erred in requiring it to disclose information about patent prosecution counsel, (2) patent prosecution attorneys are not competitive decision-makers, (3) every facet of the proposed prosecution bar is "unprecedented," (4) the Technology Area of "molecular diagnostic tests and molecular diagnostic instrument systems" is overly broad, (5) prosecution bars are unethical, and (6) the Court cannot not impose *any* prosecution bar whatsoever.

BD exaggerates its arguments and dire pronouncements of prejudice and catastrophic results. Tellingly, BD completely ignores this Court's thoughtful analysis of these issues in

1 *Presidio Components, Inc. v. American Tech. Ceramics Corp.*, 546 F. Supp. 2d 951 (S.D. Cal. 2008) and the majority rule in myriad other reported cases that have held "the patent prosecutors for any party should make a choice: either prosecute future patents . . . or litigate the patent at issue, but not both." *Id.* at 958. Instead, BD's "authority" for virtually all of its arguments is not reported case law or facts responsive to the Court's Order. Rather, BD singularly relies on the "argument" presented in the declaration of David Hricik, a professor at a law school in Macon, Georgia. Yet, ironically, neither Mr. Hricik nor BD disclose to the Court what Mr. Hricik's own writings demonstrate – that the view that both he and BD espouse as "unethical" and "unprecedented" represents the majority view that this Court already previously adopted.

The Court's March 11, 2010 order and Gen-Probe's proposed patent prosecution bar are entirely appropriate. Accordingly, Gen-Probe requests that the Court enter the protective order with the prosecution bar provision included in Paragraph 9.

## II. THE COURT SHOULD BAR PATENT PROSECUTION COUNSEL IN THE TECHNOLOGY AREA FROM REVIEWING GEN-PROBE'S "HIGHLY CONFIDENTIAL" INFORMATION

### A. Gen-Probe Has Met Its Burden Showing The Risk Of Inadvertent Use Of Its Highly Confidential Information By BD's Counsel

BD first contends in its opposition brief that the Court "misapplies the law," (Dkt. No. 31, at 2), that Gen-Probe has tried "to shift the burden to BD to show cause why the proposed bar should not be entered," (*id.*), and that "Gen-Probe does not even have an argument for applying any bar to Foley Hoag." *Id.* at 3. However, BD's arguments have no merit. Gen-Probe provided substantial evidence to support its burden of showing good cause through its submission in the parties' Joint Motion for Determination of Terms in the Protective Order and the sworn declarations of Gen-Probe's Executive Vice President and Chief Science Officer, Dr. Daniel Kacian, and of Gen-Probe's counsel. For example, Gen-Probe showed that in light of the heightened sensitivity of its most closely guarded technology secrets that may well be sought by BD in discovery, (*e.g.*, Kacian Decl. ¶¶ 5-11), and in light of the evidence of blatant copying of Gen-Probe's patent submissions by prosecution counsel operating under BD's control, (*e.g.*, Joint Motion, Dkt. No. 27, at 6-8), the risk of inadvertent disclosure of Gen-Probe's information

far outweighed any burden imposed on BD in this case if access to that information was properly limited.

BD's tactics are transparent – obstruct the meet and confer process (*see* Declaration Of Stephen P. Swinton In Support of Gen-Probe Incorporated's Reply Brief filed in Response to the March 11, 2010 Court Order Requiring Further Briefing on Issue No. 2, ("Second Swinton decl.") at ¶¶ 2-3), and then complain that Gen-Probe has not met its burden of proof. Since BD's counsel are the persons with knowledge as to their own prosecution activities, the Court's March 11, 2010 Order properly required BD's counsel to come forward with the information purportedly evidencing the absence of risk to Gen-Probe presented by those activities and any prejudice BD would suffer arising from the proposed prosecution bar. Yet even now, BD's counsel have only partially complied. (*See id.*)

### B. BD Recognizes That An Ethical Wall Is Appropriate For Screening Off Certain Prosecution Counsel And That Its Law Firms Can Implement Gen-Probe's Proposed Procedures Without Difficulty

Based on the limited information that BD has provided to the Court, it is clear that not only is a prosecution bar appropriate in this case, but that BD would not suffer any real prejudice if such a bar is incorporated into the protective order. Indeed, BD has admitted that it is inappropriate for persons involved in prosecuting patents for one client in a given "subject-matter" to prosecute patents for another client in the same "subject-matter." (*See* Dkt. No. 31, at 7 ("Ethical obligations prevent prosecution attorneys from taking on future representation in a subject matter bearing a "substantial relationship" to the technology at issue in a prior client relationship."); Dkt. No. 31-2, at 10, ¶ 30 ("Firms must protect their clients' interests by avoiding conflicts, and must protect their own interests by avoiding circumstances where the firm could be accused of misusing one client's confidences to benefit another.").) The rationale is that the confidential information of one client in the "subject-matter" could adversely affect the representation of the other client in the same subject matter, creating conflicts of interests.

This same reasoning applies to the prosecution bar: The risk is that patent prosecuting attorneys at Foley Hoag and/or Knobbe Martens may inadvertently use Gen-Probe's Highly

Confidential information in patent prosecution – *i.e.*, drafting and arguing for the granting of patent claims – of patent applications belonging to Gen-Probe's competitors in the molecular diagnostics industry in the same subject matter.  However, unlike Foley Hoag's and Knobbe Martens' clients who must be provided informed consent and must agree before permitting those firms to proceed in the face of a potential conflict (*Cf.* Dkt. No. 31, at 7-8), Gen-Probe has not been and will not be provided with that information and will not be given any choice in disclosure.  Only by implementing the prosecution bar will Gen-Probe be provided the same protection that BD acknowledges other clients of its counsel have.

BD clearly recognizes this fact.  BD has acknowledged that Knobbe Martens is prosecuting patent applications for BD's subsidiary, HandyLab, Inc., which manufactures a molecular diagnostic instrument accused by Gen-Probe of infringing its "automation" patents. (*See* Dkt. No. 31, at 4.)  BD confirms that an ethical wall is appropriate such that:

> Any person [at Knobbe Martens] staffed on the present case will first have to be vetted to confirm that he or she does not prosecute or assist in the prosecution of any patent applications owned by HandyLab, Inc.  Any person staffed on the present case will similarly be excluded from prosecuting or assisting in the prosecution of HandyLab, Inc. patent applications.

(*Id.*)

However, because Knobbe Martens did not disclose the identities of its other molecular diagnostics clients for whom it is prosecuting patents in the Technology Area, it is impossible to tell if Knobbe Martens' voluntary implementation of an ethical wall against persons prosecuting patents for BD goes quite far enough.  Gen-Probe does not know the full extent of what other competitors operating in the field of molecular diagnostic instruments and molecular diagnostic tests are represented, or will be represented, by either Knobbe Martens or Foley Hoag for purposes of prosecuting patent applications during the pendency of this case.

    **C.**    **Although Not Disclosed In His Argument, The "Opinions" Of BD's Legal Expert Mr. Hricik Reflect A Minority View And Contradict This Court's *Presidio Components* Decision**

Despite their own concessions on the propriety of an ethical wall to avoid "subject matter" conflicts, BD relies heavily in its opposition brief upon Mr. Hricik's declaration (Dkt.

No. 31-2) to present its contrary arguments. However, Mr. Hricik's opinions as to the law and how the law should be applied to the "facts" (as apparently presented to him by BD's other attorneys) are not proper subjects for expert testimony.[1] The Court knows the law and has provided its own thoughtful analysis of the law in the *Presidio Components* case.

In any event, a full examination of Mr. Hricik's own writings establish that (1) he acknowledges clear risks in allowing prosecution counsel to see highly confidential information of a clients' competitors, (2) most courts treat prosecution counsel as "competitive decision makers," and (3) the position that he and BD advocate represents a "minority view."

### 1. Mr. Hricik's Writings Acknowledge That There Are Risks In Permitting Patent Prosecution Counsel To See The Highly Confidential Information Of His Clients' Competitors

Notably, when he is not advocating for BD in this case, Mr. Hricik recognizes that there are significant and tangible risks to an adversary forced to disclose its highly confidential information to prosecution counsel without a prosecution bar:

> [T]here can be clear risks to the disclosing party raised by disclosure of sensitive information to a prosecuting-litigator. . . . Misappropriation of trade secrets is the principal basis for a prosecution bar. For example, the prosecuting-litigator can use information disclosed during discovery to draft claims in pending or new applications to cover products that the opposing party intends to bring to market. Another example would be the risk that a litigator who sees draft patent applications of the other party will as a prosecutor "be better able to 'write around' [the disclosing party's] patents when drafting [his client's] own patent applications.

(Second Swinton Decl., Exh. D, David Hricik, *Combining Prosecution with Other Forms of Representation*, in DRAFTING PATENTS FOR LITIGATION AND LICENSING 631 (ABA Section of Intellectual Property 2008) (hereinafter "Combining Prosecution") (quoting *Medtronic, Inc. v. Guidant Corp.*, 2001 U.S. Dist. LEXIS 22805, at *12 (D. Minn. Dec. 19, 2001). Mr. Hricik

---

[1] *See generally, e.g., Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004))) (upholding a district court's exclusion of an expert report and testimony that constituted a legal opinion) (emphasis in original).

1  included this same passage, verbatim, in D. Hricik and M. Meyer, Patent Ethics: Prosecution, at
2  180-81 (2009) (hereinafter "Patent Ethics").  (*See* Second Swinton Decl., Exh. E.)

3        The courts, including this Court, recognize these risks as well.  Prosecution bars are
4  enforced in order to avoid them.  *See generally Motorola, Inc. v. Interdigital Tech. Corp.*, 1994
5  U.S. Dist. LEXIS 20714, at *10-15, 1994 WL 16189689 at *4-5 (D. Del. Dec. 19, 1994) (patent
6  prosecution bar imposed; "[litigation] attorneys who receive confidential information and then
7  later prosecute patents [would] have to distil and compartmentalize the confidential knowledge
8  they have gained," they "would have to constantly challenge the origin of every idea, every spark
9  of genius.  This would be a Sisyphean task, . . .  The level of introspection that would be required
10 is simply too much to expect, no matter how intelligent, dedicated, or ethical the . . . attorneys
11 may be."); *see also Cummins-Allison Corp. v. Glory Ltd.*, No 02 C 7008, 2003 U.S. Dist. LEXIS
12 23653, at *22-23 (Dec. 31, 2004).

13       There is no reasoned basis for ignoring those recognized risks in this case.

      2.    <u>Mr. Hricik's Writings – But Not His Declaration – Acknowledge That BD's Argument Reflects The "Minority View"</u>

16       At bottom, BD's argument rests on the premise that the unpublished Federal Circuit
17 opinion, *In re Sibia*, 1997 WL 688174 (Fed Cir. 1997), controls this case.  Indeed, Mr. Hricik
18 himself "opined" that entry of the proposed prosecution bar would contradict "the Court of
19 Appeals for the Federal Circuit and this Court in a previous decision."  (Dkt. No. 31-2 at ¶ 13a.)
20 Yet Mr. Hricik's prior writings acknowledge that the unpublished *Sibia* decision "represents the
21 minority view" and has not been viewed as determinative or controlling.  (*See* Exh. D,
22 Combining Prosecution, at 624.)  In his writings, Mr. Hricik also has noted that *Sibia* arose from
23 a petition for mandamus, which the Federal Circuit denied after reviewing the particular factual
24 situation presented in that case.  (*Id.* at 625; Exh. E, Patent Ethics, at 177.)  He also has
25 recognized that most district courts have concluded that patent prosecution counsel are
26 "competitive decision makers" who should be subject to a prosecution bar: "other district courts
27 have either entered protective orders restricting access to information or enjoined (in so many
28 words) the person from prosecuting applications in 'related' areas for a period of time." (Exh. D,

Combining Prosecution, at 627; Exh. E, Patent Ethics, at 176.) He consistently has described the latter position as "the majority view." (*Id.*)

This Court has followed the majority view – it has held that a company's outside counsel involved in patent prosecution are "competitive decision-makers" who should exercise a choice: either prosecute patents or participate in the litigation. *Presidio Components*, 546 F. Supp. 2d at 955-59. The Court has noted that "numerous" courts have reached the same conclusion. *Id.* at 955-56 & n.2, 958. The Court carefully reviewed the *Sibia* decision but concluded that it did not control the outcome. *Id.*

Rather than address the Court's *Presidio Components* analysis and that in the other cases, BD and Mr. Hricik ignore them. Only by feigning ignorance of this precedent is BD able to claim that the proposed prosecution bar is "unprecedented." And, to the extent that Mr. Hricik argues that "more" is required, his declaration ignores the evidence establishing the intense competitive nature of the industry, the importance of Gen-Probe's confidential trade secret technology to its success, and the uncontroverted evidence of copying by BD. (*See* Dkt. No. 27-2 (Declaration Of Daniel L. Kacian, Ph.D., M.D., In Support Of Gen-Probe Incorporated's Positions In Joint Motion For Determination Of Terms In The Protective Order), ¶¶ 4-11.)

### 3. Mr. Hricik's Alarmist Insinuations Are Baseless

Finally, Mr. Hricik's declaration includes a number of comments that appear designed to do nothing other than mislead the Court into thinking that a parade of horrible consequences will result from the imposition of a prosecution bar. Contrary to Mr. Hricik's insinuations, Gen-Probe is not looking to ban, and its proposed prosecution bar would not prevent, the BD lawyers from "representing [their] client in all matters, let alone from representing all clients in all matters." (Dkt. No. 31-2, at 7, ¶ 20.) Nor does Gen-Probe intend to designate publicly available information as "Highly Confidential." (*Id.* at 7-8, ¶ 22.) Such information will not be subject to the prosecution bar. Likewise, contrary to Mr. Hricik's alarmist prognostications, Gen-Probe is not looking to bar BD's trial counsel from advising "about the deadline of a filing or of the filing fee or proper form to use if the application relates to the Technology Area." (*Id.* at 8-9, ¶ 24.)

1  As this Court held in *Presidio Components,* under any reasonable interpretation, such activities
2  do not constitute "prosecuting or materially assisting others involved in prosecuting patents."
3  *See generally Chan v. Intuit, Inc.*, 218 F.R.D. 659, 660-62 (N.D. Cal. 2003) (focusing on claim
4  scope).

5  **III.    THE SCOPE OF THE PROPOSED PROSECUTION BAR IS APPROPRIATE**
6      **A.    Gen-Probe's Proposed "Technology Area" Is Appropriate**

7      Not only is a prosecution bar appropriate in this case, but the bar is appropriately tailored
8  to the "Technology Area" of greatest competitive-decisionmaking concern – *viz*, "molecular
9  diagnostic tests and molecular diagnostic instrument systems."    Citing to Mr. Hricik's
10  declaration, BD contends that this scope is "overly broad" and "disproportionate to the subject
11  matter claimed in the patents asserted in this litigation." (Dkt. No. 31, at 6.)  Yet during the meet
12  and confer process, BD refused to propose any alternative.  (First Swinton Decl.; Dkt. No. 27-1,
13  at ¶ 10.)

14      First the first time in its opposition, BD proposes that an alternative "Technology Area"
15  would be "a fully automated, stand-alone instrument for isolating, amplifying and detecting
16  nucleic acids and the penetrable caps for use with that instrument." (Dkt. No. 31, at 7.)  Yet, that
17  proposal is too narrow and does not reflect the scope of the asserted patents, the documents
18  already produced by Gen-Probe, and those recently requested by BD.

19      For example, the infringing technology at issue in this case is not limited to simply the
20  "mechanical" aspects of "automating" molecular diagnostic testing – the molecular diagnostic
21  tests themselves (*i.e.*, the assays that isolate, amplify and detect nucleic acids) – are part and
22  parcel of what makes the molecular diagnostic instruments functional.  The asserted claims of
23  Gen-Probe's "automation" patents, for example, claim the molecular chemistry steps of
24  "hybridizing," "amplifying" and "detecting" a target nucleic acid sequence, such as is illustrated
25  by asserted claim 10 of Gen-Probe's U.S. Patent No. 7,118,892:

26          **10.**  The process of claim 1 further comprising performing in the
        standalone unit the automated step of exposing the target sequence
27          or its complement to a probe under conditions sufficient to permit
        the probe to hybridize to the target sequence or its complement.
28

1   Similarly, Gen-Probe's sensitive confidential and trade secret documents are not limited
2   to mere "mechanical" steps. To the contrary, even Gen-Probe's early conception and reduction-
3   to-practice documents contain detailed molecular chemistry disclosures regarding the chemistry
4   and composition of the molecular diagnostic assays running on its TIGRIS embodiment. (*E.g.*,
5   Second Swinton Decl. ¶ 7, Exh. A.) And, BD's own document requests are extremely broad,
6   demonstrating that BD does not intend to make exceptions to what it considers the relevant
7   technology in this case. (*See* Second Swinton decl. at ¶ 8; Exh. F.)

### B.    Gen-Probe's Proposed Two-Year Limitation Is Appropriate

In *Presidio Components*, this Court adopted a prosecution bar provision that prevented attorneys who had accessed the opposing party's highly confidential information from "prepar[ing], prosecut[ing], supervis[ing], or assist[ing] in the prosecution of any patent application [concerning the technology-at-issue] within two (2) years from the disclosure of such technical information or one (1) year after the conclusion of this litigation, including any appeals, whichever period is longer." 546 F. Supp. 2d at 955 (emphasis added). Gen-Probe proposes that the Court impose the same restriction in this case.

### IV.   THE BURDEN ON BD WILL BE MINIMAL

While Gen-Probe has shown both that a prosecution bar is appropriate in this case and that the proposed prosecution bar is appropriately tailored, BD has not shown that any of the individuals listed as BD's counsel of record are prejudiced by the proposed prosecution bar. The provision concerns persons "who prosecute *or materially assist* others who prosecute patents in the Technology Area." Prosecution is the activity of drafting and arguing patent claims before the PTO, which is the crux of competitive decision making activity. *Presidio Components*, 546 F. Supp. 2d at 958; *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782, *8, 2004 WL 1196965, *2 (D. Del. May 25, 2004) ("Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making.") (quoting *Motorola,* 1994 U.S. Dist. LEXIS 20714, at *11, 1994 WL 16189689 at * 4).

According to Ms. Fiacco's March 8, 2010 representations, "[n]one of the attorneys of record from Foley Hoag is a member of the patent bar . . . nor are they either scientists or engineers by training" and "they do not prosecute patents." (Dkt. No. 27-3, at 1.) Similarly, Mr. Zelkind from Knobbe Martens has represented that his practice "now involves exclusively intellectual property litigation" and "I have never prosecuted patents or supervised patent prosecution in the field of biotechnology." (Dkt. No. 31-7, at 1.) Thus, the burden on BD's counsel of record will be minimal, if not non-existent.[2]

## V.  CONCLUSION

Gen-Probe respectfully requests that the Court preclude patent prosecution personnel at Foley Hoag and Knobbe Martens involved in the prosecution of patents in the Technology Area of molecular diagnostic tests and molecular diagnostic instrument systems from accessing Gen-Probe "Highly Confidential – No Prosecution Counsel" information. Gen-Probe further requests that the Court direct the Foley Hoag and Knobbe Martens law firms to establish the ethical walls detailed above.

Dated: March 30, 2010                               LATHAM & WATKINS LLP

                                                    By   /s/Stephen P. Swinton
                                                         Stephen P. Swinton

                                                    Attorneys for Plaintiff
                                                    GEN-PROBE INCORPORATED

---

[2] Likewise, none of the previously undisclosed attorneys at the Foley Hoag firm – Kimberly Peaslee, Hathaway Russell and Peter Sollins – nor the previously undisclosed technology specialist – Philip Choi – need suffer any prejudice. Notably, Dr. Sollins has declared that "I have not prosecuted any patent applications nor represented any clients in litigation concerning technology in the area of 'molecular diagnostics.'" (Dkt. No. 31-4, at 1.) Thus, Dr. Sollins, in addition to BD's counsel of record, would not be adversely affected by the proposed prosecution bar either, demonstrating that it can employ technology experts without running into the proposed prosecution bar. It also should be noted that BD's selection of which attorneys it chooses to staff on this case and view Gen-Probe's "Highly Confidential" information *is wholly discretionary*. No one is forcing Foley Hoag to utilize declarants Choi, Peaslee, Sollins, or Russell on the litigation team on behalf of BD or to view Gen-Probe's "Highly Confidential" information. Thus, the alarmist contentions that imposing a prosecution bar in this case would prejudice or impose a significant burden on BD are simply not true.

# PROOF OF SERVICE

I am employed in the County of San Diego, State of California. I am over the age of 18 years and not a party to this action. My business address is Latham & Watkins LLP, 12636 High Bluff Drive, Suite 400, San Diego, CA 92130.

On March 30, 2010, I served the following document described as:

1. **GEN-PROBE INCORPORATED'S REPLY TO BECTON, DICKINSON'S RESPONSE TO MARCH 11, 2010 COURT ORDER REQUIRING FURTHER BRIEFING ON ISSUE NO. 2**

by serving a true copy of the above-described document in the following manner:

## BY ELECTRONIC FILING

I am familiar with the United States District Court, Southern District of California's practice for collecting and processing electronic filings. Under that practice, documents are electronically filed with the court. The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. Under said practice, the following CM/ECF users were served:

| | |
|---|---|
| Boris Zelkind, Esq.<br>  boris.zelkind@kmob.com<br>Erik T. Anderson, Esq.<br>  erik.anderson@kmob.com<br>Knobbe, Martens, Olson & Bear LLP<br>550 West C Street, Suite 1200<br>San Diego, CA 92101 | Donald R. Ware, Esq.<br>  dware@foleyhoag.com<br>Barbara A. Fiacco, Esq.<br>  bfiacco@foleyhoag.com<br>Brian C. Carroll, Esq.<br>  bcarroll@foleyhoag.com<br>Foley Hoag LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210-2600 |

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 30, 2010, at San Diego, California.

Alison L. Montera