1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEN-PROBE INCORPORATED, | Case No. 09-CV-2319 BEN (NLS) |
| Plaintiff and Counterdefendant | **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |
| v. | |
| BECTON, DICKINSON AND COMPANY, | **DISCOVERY MATTER** |
| Defendant and Counterclaimant | |
| AND RELATED COUNTERCLAIMS | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Pursuant to the Order Amending Paragraph No. 17 of March 1, 2010 Scheduling Order

2  issued by Magistrate Judge Nita L. Stormes on March 1, 2010, Plaintiff Gen-Probe Incorporated

3  ("Gen-Probe") and Defendant Becton, Dickinson and Company ("BD"), hereby jointly move the

4  Court for determination of a discovery dispute arising from Gen-Probe's First Set Of

5  Interrogatories and First Set Of Requests For Production, served January 6, 2010, to which BD

6  responded on March 5, 2010.  The parties have met and conferred about their disputes and

7  exchanged multiple communications regarding the same, the result of which is that BD has

8  agreed to provide supplemented responses to certain of Gen-Probe's First Set Of Interrogatories

9  and a verification by May 14, 2010, and otherwise produce specific previously disputed

10  categories of documents requested by Gen-Probe in its First Set Of Requests For Production.

11  However, several disputes remain that require the Court's resolution, as follows.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    DISPUTE OVER GEN-PROBE'S INTERROGATORY NO. 1

**Gen-Probe's Interrogatory No. 1:**  State with particularity all facts upon which You rely to assert in Your Tenth Affirmative Defense of Your Answer that "some or all of Gen-Probe's claims for relief are barred by the doctrines of waiver, laches, and/or estoppel" and identify all documents that You contend support this Affirmative Defense.

**BD's Response To Interrogatory No. 1**:  BD objects to this interrogatory to the extent that it calls for a legal conclusion and/or seeks information protected by the attorney-client privilege, work product doctrine and/or any other applicable privilege.  BD further objects to this interrogatory as premature because it seeks information exclusively within the possession, custody or control of Gen-Probe, which will be the subject of ongoing discovery.  BD further objects that the Interrogatory seeks information concerning defenses that relate to Gen-Probe's contentions concerning literal infringement and/or infringement under the doctrine of equivalents, which Gen-Probe has not yet disclosed.  To the extent this Interrogatory seeks information concerning documents or other evidence that BD intends to present at trial in support of its affirmative defenses, BD responds that discovery is ongoing and it has not yet identified all such information. BD reserves the right to modify or supplement its response to this interrogatory after the close of all discovery. BD further objects to this interrogatory on the ground that it seeks expert discovery prior to the date for expert reports. BD further objects to this interrogatory as compound.

Subject to the foregoing specific objections, and without waiver of the foregoing general objections, BD responds as follows:  Gen-Probe delayed unreasonably and inexcusably in filing this action alleging infringement of U.S. Patent. No. 5,612,200 (the "'200 patent") and Gen-Probe's delay has caused prejudice to BD. The '200 patent issued on March 18, 1997.  Gen-Probe alleges that any "written instructions" provided by BD to users of the accused systems "directed users of [the accused] nucleic acid testing systems and companion assays to practice the '200 patent."  The BD ProbeTec™ ET System's manual has referred to sodium hypochlorite, among other things, for more than six-years prior to the filing of Gen-Probe's Complaint in this action on October 19, 2009.  On information and belief, Gen-Probe has been aware of BD's references to sodium hypochlorite in manuals for users of its nucleic acid testing systems for more than six years prior to the filing of the Complaint in this action.  In light of Gen-Probe's failure to object to BD's references, BD has been prejudiced by Gen-Probe's inaction and delay.  BD states that, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, the information responsive to this Interrogatory may be ascertained readily from documents that will be produced by BD in response to Gen-Probe's First Set of Requests for Production of Documents, served on January 6,2010.

## A.    Gen-Probe's Reasons to Compel Further Response:

In its Answer to Gen-Probe's Complaint for patent infringement, BD alleged a tenth affirmative defense, stating that "Some or all of Gen-Probe's claims for relief are barred by the doctrines of waiver, laches, and/or estoppel, including but not limited to estoppel based on representations to the United States Patent and Trademark Office during prosecution of the '256 patent, '255 patent, '652 patent, '143 patent, '892 patent, '200 patent, '308 patent, and/or '612

patent." Accordingly, Gen-Probe's Interrogatory No. 1 seeks the *factual bases* for BD's defense of "waiver, laches, and/or estoppel." In response, however, BD only provided facts relating to purported delay by Gen-Probe in bringing suit under the '200 patent, and merely asserted that BD was prejudiced as a result of that delay. After meeting and conferring, BD ultimately agreed to supplement its response by May 14, 2010 with actual facts purportedly concerning BD's alleged "prejudice."

However, facts tending to show "delay" and "prejudice" may suffice only in relation to BD's apparent laches defense. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028-29 (Fed. Cir. 1992). The defense of estoppel is distinct from laches, and requires, at minimum, a showing of a "misleading communication" by Gen-Probe and "actual reliance" by BD.[1] *Id.* at 1042-43. Moreover, "waiver," to the extent it is even a recognizable affirmative defense to patent infringement, requires a showing of "a duty to speak," among other things. *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1019 (Fed. Cir. 2008).

Gen-Probe's Interrogatory No. 1 directly asks for such facts relating to BD's purported "waiver" and "estoppel" affirmative defenses, in addition to its laches defense, and thus indisputably seeks relevant information. But BD's response to Interrogatory No. 1 does not present any such facts. Presumably, BD complied with its obligations to investigate those facts and determine whether they provide any support for its defenses prior to filing its Answer. BD therefore cannot justify its failure to fully respond to Interrogatory No. 1 merely by claiming that "discovery is ongoing."

Gen-Probe is entitled to know *now* all the facts that supposedly allow BD to assert its tenth affirmative defense in good faith. Without that factual information, Gen-Probe will not have a meaningful opportunity to investigate and test those facts during the remainder of discovery, and is prejudiced as a result. If BD has no such facts to support its ambiguous claims

---

[1]   BD also crafts its "estoppel" defense as "including but not limited to" what would be deemed "prosecution history estoppel." *See, e.g.*, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 535 U.S. 722 (2002).

of "waiver" and "estoppel," it must state as much as a prelude to withdrawing those defenses.[2]

### B.    BD's Basis For Objecting To Responding Further:

Before addressing the substance of Gen-Probe's motion to compel, BD objects to Gen-Probe's unreasonable delay in waiting until just two business days before the deadline for this Joint Statement to provide BD with the argument in support of its motion.[3]  Although Gen-Probe raised this dispute in early March, BD first received Gen-Probe's argument and support after the close of business on Thursday, April 15, 2010.  Gen-Probe's tactic was nothing more than an attempt to prejudice BD's ability to respond.

Turning to the substance of Gen-Probe's motion concerning Interrogatory No. 1, BD has already agreed to provide the supplementation that Gen-Probe seeks to compel.  As explained to Gen-Probe's counsel in correspondence preceding this motion, BD does not object to responding further and agreed to supplement its answer by May 14, 2010 with information in its possession concerning prejudice to BD.  BD also informed Gen-Probe that it will supplement the balance of its answer to this contention interrogatory upon obtaining discovery from Gen-Probe.

There is good reason for the Court to permit BD to develop its defenses of laches, waiver, and estoppel through discovery and further supplement its answer.  For example, as explained in BD's initial response to Interrogatory No. 1, Gen-Probe's '200 patent (the "Bleach patent") issued in 1997 and BD's product manuals have referenced the use of bleach, among other things, since *at least 1998*.  Gen-Probe's delay of more than 10 years in filing this lawsuit gives rise to a presumption of laches.  <u>A.C. Aukerman Co. v. R. L. Chaides Constr. Co.</u>, 960 F.2d 1020, 1036 (1992).  Before responding further to Interrogatory No. 1, BD will need discovery from Gen-Probe including, for example, information concerning Gen-Probe's first awareness of BD's use

---

[2]    BD similarly filed a skeletal thirteenth affirmative defense of "unclean hands."  As part of its First Set Of Interrogatories, Gen-Probe sought BD's factual bases for that defense similar to Interrogatory No. 1.  During the meet and confer process, however, BD ultimately admitted that it has no such facts but rather intends to use the discovery process as a fishing expedition to search for anything that might allow it to present such a defense.  Accordingly, Gen-Probe has filed a motion to strike that baseless defense.  The motion is scheduled to be heard on May 10, 2010.  *See* Gen-Probe's Motion To Strike Defendant's "Unclean Hands" Affirmative Defense, Doc. No. 31.

[3]    BD has asked Gen-Probe to agree that, in any future discovery disputes, the moving party will permit the responding party seven days to prepare argument and support for inclusion in a Joint Statement.  At the time of filing, Gen-Probe had not yet responded to BD's proposal.

4

of the accused method.  Discovery will also be necessary to determine the level of evidentiary prejudice (e.g., the unavailability of key witnesses and documentation) that resulted from Gen-Probe's delay in bringing this claim.  The '200 patent claims priority back to the early 1990's.  Gen-Probe has provided only last-known contact information for two of the four inventors of the '200 patent and stated that a third inventor's location is unknown.  Further, because Gen-Probe has not yet produced documents pertaining to the '200 patent, BD is not able to determine whether key documentation from the early 1990's has been destroyed.

BD's agreement to supplement its answer to Gen-Probe's contention interrogatory as discovery progresses is consistent with widely-accepted civil discovery practices.  See Fed. R. Civ. P. 33(a)(2) (permitting courts to order that contention interrogatories need not be answered prior to discovery); see also ABA Civil Discovery Standards, comments to Rule 8 ("[C]ontention interrogatories ordinarily are more appropriate after the bulk of discovery has already taken place.  At that point, the party on whom the interrogatories are served should have the information necessary to give specific, useful responses.").  In at least one Federal Court, parties are actually precluded by rule from serving contention interrogatories until *after* sufficient discovery has been conducted to enable the parties to respond.  See S.D.N.Y. Local Rule 33.3(c) (parties precluded from serving contention interrogatories until "the conclusion of other discovery").  Courts in California similarly look with disfavor upon contention interrogatories served at the outset of litigation, prior to any discovery.  In re Ebay Seller Antitrust Litigation, 2008 WL 5212170, *1-*2 (N.D. Cal., Dec. 11, 2008) ("the tentative nature of any responses [to contention interrogatories] generated at this [early] stage would be of questionable value to the goal of efficiently advancing the litigation").  Interrogatories that simply track the language of a parties pleading (such as Gen-Probe's Interrogatories Nos. 1-3) are particularly offensive.  In re Convergent Technologies Sec. Litig., 108 F.R.D. 328, 337-338 (N.D. Cal. 1985) ("This court will look with considerable skepticism at sets of contention interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading.").

Because Gen-Probe's motion to compel is premature at this stage of the case, because of the strength of BD's defense, and because BD does not object to responding further as discovery

CASE NO. 09-CV-2319 BEN (NLS)

1    progresses, the Court should deny Gen-Probe's motion.

2          C.    **Gen-Probe's Reply[4]:**

3          BD's resistance to providing a full and complete response to Gen-Probe's Interrogatory

4    No. 1 reveals that BD *has no good faith basis* for its asserted affirmative defenses of "waiver" or

5    "estoppel."   Gen-Probe has taken BD at its word that it will supplement its interrogatory

6    response with respect to facts concerning its alleged "prejudice" in connection with BD's laches

7    defense by May 14, 2010.  That supplementation is *not* (presently) in dispute.  However, despite

8    BD's admission that it has been anticipating this litigation since Gen-Probe's '892 patent issued

9    in October 2006 (*see* BD's opposition arguments re: Interrogatory No. 4, infra at ___), BD

10   contends that it must have discovery from Gen-Probe in order to supplement "the balance" of its

11   answer regarding its asserted defenses of "waiver" and "estoppel."

12         The Court should compel BD to provide a verified response setting forth whatever

13   supposed facts it has to support its asserted "waiver" and "estoppel" defenses separate from

14   laches and, if it has no such facts, to state as much.  This is not a circumstance in which a

15   responding party requires discovery from a requesting party to flesh out the proof required to

16   prevail on a particular claim or defense.  This *is* a circumstance in which the responding party

17   has not even set forth facts showing that it has a "facially plausible" *theory* to support its alleged

18   claim or defense.  *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  At the

19   same time, the Federal Rules of Civil Procedure do not allow BD to merely assert a baseless

---

21   [4]    BD's assertion that Gen-Probe unreasonably delayed in bringing its positions presented in this motion
22   is demonstrably false and irrelevant.  Gen-Probe originally sought BD's agreement to meet and confer
     on March 24, 2010.  BD refused to meet at that time and insisted that the meeting take place on
23   March 31.  At the March 31 meeting, counsel for Gen-Probe informed counsel for BD that Gen-Probe
     would need to file a motion to compel on the still-disputed matters by April 5th, corresponding to the
24   Court's then-extant deadline under Paragraph 17 of the Court's original Scheduling Order (Dkt. No.
     25).  At BD's request, the parties telephoned the Court's chambers on April 1st seeking confirmation
25   of that deadline, at which time counsel for BD advocated for "more time" for the parties to try to
     work out their disputes.  The Court subsequently issued an Order Amending Paragraph 17 (Dkt. No.
26   35) which effectively extended the deadline for filing a motion to compel to today, Monday, April 19
     (first business day after 45 days after BD's March 5 discovery responses).

27   Gen-Probe used the extra time to try to persuade BD to comply with its discovery obligations.
     However, on April 12, BD rejected that effort.  BD also rejected Gen-Probe's proposal for a joint
28   exchange of arguments for this Joint Motion so it could be filed by Friday, April 15.  Instead, BD
     refused to submit is portion of this joint motion until after 11 AM today.

CASE NO. 09-CV-2319 BEN (NLS)

1    defense and then use discovery to "fish" for the necessary facts.  *E.g.*, *Costella v. Clark*, 2009

2    WL 4730856, at *2 (N.D. Cal. 2009) ("[F]ederal discovery [does not serve as a] fishing

3    expedition to investigate mere speculation.") (alterations in original) (quoting *Calderon v.*

4    *District Court (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996)); *Camarillo v. City of Maywood*,

5    2008 WL 4056994, at *4 (C.D. Cal. 2008) ("The Court will not permit a fishing expedition based

6    on boilerplate allegations."); *McColm v. Restoration Group, Inc.*, 2007 WL 1470106, at * 9

7    (E.D. Cal. 2007) ("[D]iscovery may not be used to conduct a fishing expedition in hopes that

8    some fact supporting an allegation will be uncovered.") (citations omitted).

9         Gen-Probe's use of Interrogatory No. 1 to examine BD's baseless "waiver" and

10   "estoppel" defenses at the outset of discovery is entirely appropriate.  As one district court found

11   in analogous circumstances:

12            Plaintiff should provide as much information as possible regarding
              his claims without delay and as early as required.  Defendants are
13            "entitled to know the factual basis of plaintiff's allegations."
              Plaintiff is not entitled to withhold discovery information until he
14            has obtained to his own satisfaction all discovery from Defendants.
              ***Plaintiff must be aware of some of the specific facts upon which***
15            ***the allegations in his Complaint are based, otherwise he would***
              ***not have made the allegations in the first place.***  For this reason,
16            the Court finds that the contention interrogatories here are not
              premature and Plaintiff shall be required to fully answer them.

17

18   *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 544-545 (D. Kan. 2006) (emphasis added).

19        The cases that BD relies on in its opposition – namely, *In re eBay Seller Antitrust*

20   *Litigation*, 2008 WL 5212170 (N.D. Cal., Dec. 11, 2008) and *In re Convergent Technologies*

21   *Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985) – do not hold otherwise.  Although BD argues that

22   Interrogatory No. 1 is "premature" because of the discovery it supposedly needs from Gen-Probe

23   to support its "waiver" and "estoppel" defenses, in fact, the *eBay* court specifically relied on *In*

24   *re Convergent Technologies* to hold that "contention" interrogatories are absolutely appropriate

25   in this circumstance for, among other things, "(1) clarifying the issues in the case; (2) narrowing

26   the scope of the dispute; … or (4) exposing a substantial basis for a motion under Rule 11 or

27   Rule 56."  2008 WL 5212170, at *1 (citing *re Convergent Technologies*, 108 F.R.D. at 338).

28

CASE NO. 09-CV-2319 BEN (NLS)

## II.   DISPUTE OVER GEN-PROBE'S INTERROGATORY NO. 4

**Gen-Probe's Interrogatory No. 4:**  State with particularity all facts surrounding Your first awareness of each Asserted Patent, including any patents or patent applications to which the Asserted Patents claim priority, and for each such fact, identify the person or persons who learned about such facts, when such facts were learned, and from whom and/or from where such facts were learned.

**BD's Response To Interrogatory No. 4**:  BD objects to this interrogatory to the extent that it calls for a legal conclusion and/or seeks information protected by the attorney-client privilege, work product doctrine and/or any other applicable privilege.  BD further objects to this interrogatory as premature.  To the extent this Interrogatory seeks information concerning documents or other evidence that BD intends to present at trial in support of its affirmative defenses, BD responds that discovery is ongoing and it has not yet identified all such information.  BD reserves the right to modify or supplement its response to this interrogatory after the close of all discovery.  BD further objects to this interrogatory on the ground that it seeks expert discovery prior to the date for expert reports.  BD objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks a response identifying "all" facts and to the extent it seeks information concerning patents, and related patent applications, not asserted by Gen-Probe in this action, including patents or patent applications to which the Asserted Patents claim priority.  Such information is not relevant to any claim or defense of any party and is not likely to lead to the discovery of admissible evidence.  BD further objects that this Interrogatory is vague in seeking identification of the persons who first learned of "each such fact."  BD further objects that this Interrogatory as compound.

Subject to the foregoing specific objections, and without waiver of the foregoing general objections, BD responds as follows:

Allan Kiang became aware of U.S. Pat. No. 7,560,256 shortly after the patent's issuance.

Allan Kiang became aware of U.S. Pat. No. 7,560,255 shortly after the patent's issuance.

Allan Kiang became aware of U.S. Pat. No. 7,524,652 shortly after the patent's issuance.

Allan Kiang became aware of U.S. Pat. No. 7,482,143 shortly after the patent's issuance.

Allan Kiang became aware of U.S. Pat. No. 7,118,892 shortly after the patent's issuance.

Allan Kiang became aware of U.S. Pat. No. 7,294,308 shortly after the patent's issuance.

David Lentz became aware of U.S. Pat. No. 6,893,612 in October 2006.

David Highet became aware of U.S. Pat. No. 5,612,200 in September 1997.

### A.   Gen-Probe's Reasons to Compel Further Response:

Gen-Probe accuses BD of willfully infringing and inducing others to infringe eight different patents in this case.  To succeed on these claims, Gen-Probe must demonstrate that BD

1   possessed and disregarded actual or constructive knowledge of each of those patents.  *See In re*

2   *Seagate Tech., L.L.C.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc); *SEB S.A. v. Montgomery*

3   *Ward & Co.*, 594 F.3d 1360, 1373 (Fed. Cir. 2010).  Accordingly, Gen-Probe propounded

4   Interrogatory No. 4 to discover the facts surrounding BD's first awareness of the asserted

5   patents.  BD provided an incomplete response – although it disclosed *who* at BD first learned of

6   each asserted Gen-Probe patent and approximately *when*, it refused to disclose the facts

7   surrounding that first knowledge, such as *how* that information was acquired and *what*, if

8   anything, BD did as a result.

9           After meeting and conferring, BD agreed to supplement its response by May 14, 2010

10  with the facts surrounding its first awareness only of the '612 patent, through David Lentz, and

11  of the '200 patent, through David Highet, an in-house attorney who is BD's Vice President of

12  Intellectual Property.  However, BD refused to provide the facts surrounding its first awareness

13  of the six other asserted patents through Allan Kiang, asserting that this information was

14  protected from discovery by the attorney-client privilege and/or the work product doctrine.

15          Neither of BD's privilege theories, however, is supportable.  BD cannot carry its burden

16  of showing that the attorney-client privilege protects the discovery sought by Gen-Probe.  It is

17  axiomatic that mere facts are not protected by the attorney-client privilege.  *See Upjohn Co. v.*

18  *United States*, 499 U.S. 383, 395 (1981) (declaring that the privilege "only protects disclosures

19  of communications; it does not protect disclosure of the underlying facts by those who

20  communicated with his attorney."); *see also Castaneda v. Burger King Corp.*, 259 F.R.D. 194,

21  197 (N.D. Cal. 2009) (quoting Advisory Committee Notes to Rule 26, 48 F.R.D. 487, 501 (1970)

22  ("[O]ne party may discover relevant facts known to the other party, even though such facts are

23  contained in a document which itself is not discoverable.")).  Likewise, BD cannot carry its

24  burden to demonstrate that the work product doctrine shields discovery in this case.  First, as

25  with the attorney-client privilege, "purely factual materials" are not protected.  *See Powell v.*

26  *United States*, 584 F.Supp. 1508, 1520 (N.D. Cal. 1984).  Second, work product protection

27  extends only to materials prepared in anticipation of litigation.  *See* Fed. R. Civ. P. 26(b)(3)(A).

28

CASE NO. 09-CV-2319 BEN (NLS)

1    At minimum, BD has the obligation to provide the foundational facts purportedly

2  supporting its claims that the discovery sought is, in fact, protected against disclosure by either

3  the attorney-client or work product privileges so those claims can be properly evaluated and, if

4  appropriate, challenged.[5]  As this Court previously held, "the party opposing discovery has the

5  burden of showing that discovery should  not be allowed, and also has the burden of clarifying,

6  explaining and supporting its objections."  *Calderon v. United States*, 2008 WL 1787497, at *2

7  (S.D. Cal. Apr. 15, 2008) (Stormes, J.) (citations omitted); *see also Bryant v. Ochoa*, 2009 WL

8  1390794, at *1 (S.D. Cal. May 14, 2009) (same).  Indeed, this Court has recently applied this

9  principle of disclosure and compelled discovery under analogous circumstances.  In *I-Flow*

10  *Corp. v. Apex Medical Techs., Inc.*, a patent infringement action, Magistrate Judge Stormes

11  declared that the privilege "does not extend to foundational questions that do not require the

12  disclosure of any legal advice sought or provided," and granted a motion to compel disclosure of

13  foundational information needed to establish the privilege in the first place.  Case No. 07cv1200,

14  Doc. No. 156, at 3 (S.D. Cal. Apr. 2, 2009) (emphasis added) (ruling on a motion to compel filed

15  by Mr. Zelkind, current counsel for BD).  Despite this Court's clear mandate, and BD's

16  counsel's obvious knowledge of that mandate, BD has inexplicably refused to support its

17  privilege objections.

18    The discovery sought by Gen-Probe through Interrogatory No. 4 is highly relevant.

19  Because BD cannot meet its burden to demonstrate that the discovery should not be allowed, the

20  Court should compel BD to supplement its response to that interrogatory to provide full

21  disclosure of all facts surrounding its first awareness of each asserted patent – not only including

22  the "who" and the "when," but also the "how" and the "what" it did in response to its first

23  awareness of those patents.  To the extent BD claims those plain facts are somehow privileged,

24  _____

25  [5]  For example, BD has not "describe[d] the nature of the documents, communications, or tangible
    things not produced or disclosed" in refusing to answer this interrogatory pursuant to the work

26  product doctrine, as required by the Federal Rules.  *See* Fed. R. Civ. P. 23(b)(5)(A).  Thus, Gen-Probe
    is left to speculate as to whether these facts are actually contained in work product or alternatively, in

27  investigative reports prepared in the ordinary course of business.  The latter, of course, are not
    protected from discovery.  *See, e.g.*, *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998);

28  Fed. R. Civ. P. 26(b)(3)(A).  At the very least, Gen-Probe is entitled to a log listing documents that
    contain this information and that which BD has withheld.

CASE NO. 09-CV-2319 BEN (NLS)

1    the Court should compel BD to disclose the foundational information needed to sustain that

2    privilege.

3          **B.**      <u>**BD's Basis For Objecting To Responding Further:**</u>

4          With respect to the five patents that are the subject of this motion ('255, '256, '652, '892,

5    and '143 patents), BD disclosed that one of its in-house counsel, Allan Kiang, was the first

6    person to learn of the issuance of each patent, at or near the time each patent issued.  Gen-

7    Probe's request to delve into circumstances of ***how*** Mr. Kiang learned of the issuance of the

8    patents, and ***what*** he was doing then and afterwards, would breach the attorney-client privilege

9    and eliminate work product protection.  Further, such information is not material to any of Gen-

10   Probe's claims.   In support of its motion, Gen-Probe provides only a single, unsupported

11   assertion that the information is "highly relevant."

12         Work product protection applies to Mr. Kiang's actions and impressions concerning his

13   awareness of the issuance of the '892 patent (Oct. 2006) and other later-issued patents because

14   BD became aware of the potential for litigation with Gen-Probe at or about the time the '892

15   patent issued.  Actions to prepare for potential litigation including, for example, monitoring the

16   progress of pending patent applications and searching for related applications, is protected work

17   product.  *Cf. Golden Trade v. Jordache*, 143 F.R.D. 508, 511 (S.D. N.Y. 1992) (information

18   about prior art searching immune from discovery even though information sought was factual).

19   Indeed, the information Gen-Probe seeks from BD goes directly to the "core" of the work-

20   product doctrine, the "mental processes of an attorney."  *United States v. Nobles*, 422 U.S. 225,

21   238 (1975).  Furthermore, whether Mr. Kiang discovered the issuance of the asserted patents by

22   reading periodic Patent Office publications or by monitoring the proceedings is not relevant to

23   any of Gen-Probe's claims.

24         The attorney-client privilege additionally prevents Gen-Probe from inquiring further into

25   the "***how***" and "***what***" concerning Mr. Kiang's first awareness of the issuance of the '255, '256,

26   '652, and '143 patents (all of which issued in 2009) because the information would reveal

27   communications with outside litigation counsel.  BD retained Foley Hoag as outside litigation

28   counsel to represent BD in the event of litigation with Gen-Probe prior to the issuance of each of

CASE NO. 09-CV-2319 BEN (NLS)

1   the '256, '255, '652, and '143 patents.  Any communications between Mr. Kiang and Foley

2   Hoag concerning the issuance of those patents are unquestionably privileged.  *See DeKalb*

3   *Genetics Corp. v. Syngeta Seeds, Inc.*, No. 4:06CV01191 (E.D. Mo. Feb. 12, 2008) ("How

4   Defendants became aware of the information may be the subject of privileged communications,

5   and therefore, to the extent the 'how' contains privileged information, it need not be disclosed.");

6   *see also Upjohn v. United States*, 449 U.S. 383, 391 (1981) (Privilege protects giving of

7   information to lawyer that will "enable him to give sound and informed advice.").

8        Gen-Probe's demand for a "privilege log" detailing the information withheld from BD's

9   interrogatory answer is misplaced and conflicts with the parties' agreement in their Joint Rule

10  26(f) Statement (Dkt. No. 19).  As an initial matter, Gen-Probe's Interrogatory No. 4 does not

11  seek identification of documents or communications that must be included in a privilege log

12  pursuant to Fed. R. Civ. P. 23(b)(5)(A).   In that regard, Gen-Probe's reliance on *I-Flow*

13  *Corporation* as support to compel BD to produce a privilege log at this stage is also misguided.

14  Case No. 07cv1200, Doc. No. 156, at 3 (S.D. Cal. Apr. 2, 2009); *Cf. Tulip Computers Int'l v.*

15  *Dell Computer Corp, 210 F.R.D. 100, 107* (Interrogatory is "not seeking what Dell suggests that

16  it is – identification of documents and individuals.  It is seeking a process apparently employed

17  after litigation" and therefore cannot be compelled).  The parties agreed in their Joint Statement

18  to exchange privilege logs at a mutually agreed upon time in connection with the parties'

19  production of documents.  BD's privilege log will identify any documents withheld as work

20  product concerning Mr. Kiang's first knowledge of these five patents.  BD is unaware of any

21  precedent requiring a privilege log in response to an interrogatory that does not identify or

22  describe documents.  A privilege log of Mr. Kiang's own knowledge is neither practical nor

23  legally compelled.  *Hickman v. Taylor*, the landmark case on work-product protection, explicitly

24  noted the dangers of compelling disclosure of oral communications.  329 U.S. 495, 512–13

25  (1947) ("[F]orcing an attorney to repeat or write out all that [people] have told him and to deliver

26  the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness.").

27       As to Mr. Kiang's privileged communications with Foley Hoag concerning BD's

28  awareness of these five patents, the parties agreed that attorney-client communications with

outside litigation counsel need not be identified in a privilege log.  See Joint Statement Pursuant to Rule 26(f), Court's Docket No. 19, p. 8 ("The parties further agree that communications between a client and its outside litigation counsel (inclusive of nontestifying experts) and the attorney work product of outside litigation counsel need not be listed on its privilege log."). Gen-Probe has not provided any reason for ignoring these agreements and demanding that BD unilaterally produce a privilege log at this early stage, prior to production of documents and prior to the parties' meet and confer concerning the production of ESI.

In addition to seeking privileged information, Gen-Probe's Interrogatory No. 4 is further objectionable for its scope.  Gen-Probe's request for "all facts surrounding" Mr. Kiang's awareness of the '892 patent family is overly broad an unduly burdensome.  As stated by this Court in *Mancini v. Insurance Corp. of New York*, No. 07-cv-1750 (S.D. Cal. June 18, 2009), interrogatories are "often overly broad and unduly burdensome when they require a party to state 'every fact' or 'all facts'. . ."  BD has answered the interrogatory by providing the facts material to BD's awareness of the asserted patents.  In light of this information, additional details concerning the activities of BD's in-house counsel concerning the first awareness, even if such details were not immune from discovery, are not relevant to Gen-Probe's claims.

For these reasons, the Court should deny Gen-Probe's motion to compel further information concerning BD's first awareness of the '892, '256, '255, '652, and '143 patents.

**C.**     **Gen-Probe's Reply:**

For the first time since BD served its deficient response to Interrogatory No. 4 on March 5, 2010, BD has finally come forth in its opposition with some facts purporting to support its claim that the circumstances of Allan Kiang's first knowledge of the asserted '892, '256, '255, '652, and '143 "automation" patents are privileged.  In one fell swoop, BD reveals:

- Mr. Kiang "discovered" the '892, '256, '255, '652, and '143 on his own, and apparently, not through a communication with any third party;

- Mr. Kiang started preparing for potential litigation with Gen-Probe in around October 2006, when he discovered that the '892 patent had issued;

1    • BD hired the Foley Hoag firm prior to the issuance of the '256, '255, '652, and '143

2       patents (*i.e.*, prior to January 27, 2009) to represent BD in the event of litigation with

3       Gen-Probe.

4       Far from substantiating BD's objections, BD's revelations actually support the propriety

5    of an order compelling a supplemented interrogatory response providing these and all other such

6    facts surrounding the "how" and the "what" BD did immediately in response to its first

7    awareness of the patents-in-suit.  BD clearly has additional facts to disclose that are not cloaked

8    by any privileged communications and do not reveal any "opinion" work product. Such

9    information is directly relevant to Gen-Probe's burden to show BD's willful infringement – *i.e.*,

10   clear and convincing evidence that BD "acted despite an objectively high likelihood that its

11   actions constituted infringement of a valid patent."  *In re Seagate*, 497 F.3d 1360, 1371 (Fed.

12   Cir. 2007).  Such information is also directly relevant to Gen-Probe's burden to show, "in the

13   totality of the circumstances," that BD induced others to infringe the method claims of the

14   asserted patents once they were discovered by Mr. Kiang.  *See, e.g.*, *Broadcom Corp. v.*

15   *QUALCOMM Inc*., 543 F.3d 683, 688-700 (Fed. Cir. 2008).

16      At minimum, the above stated facts in BD's opposition arguments purporting to support

17   BD's privilege claims in response to Interrogatory No. 4 should be provided in a supplemental

18   interrogatory response that can be verified by BD directly under oath.  To be clear, Gen-Probe

19   does not at this time require a "privilege log" of documents that BD is withholding from

20   discovery (as BD concedes, Interrogatory No. 4 does not seek identification of *documents*), but,

21   insofar as BD claims that the factual *events* that took place surrounding BD's first awareness of

22   the patents-in-suit are privileged, including the "how" and the "what" BD did immediately in

23   response to that first awareness, Gen-Probe is entitled to discover that foundational information

24   as evidence in support of its willful infringement and inducement case.

25

26

27

28

**III.    DISPUTE OVER GEN-PROBE'S INTERROGATORY NO. 5**

**Gen-Probe's Interrogatory No. 5:**  Please identify the names, most recent titles, current addresses and phone numbers, dates of tenure, and job responsibilities of each person most knowledgeable about the design, development, manufacturing, marketing, sales, distribution, and regulatory affairs (including submissions for approval by United States regulatory bodies or governing agencies) for each of the BD Instruments, BD ProbeTec Assays, and BD Penetrable Cap Products.

**BD's Response To Interrogatory No. 5**:  BD also objects to this interrogatory, including the phrase "each of the BD Instruments, BD ProbeTec Assays, and BD Penetrable Cap Products," as overly broad, unduly burdensome and seeks documents not reasonably calculated to lead to the discovery of admissible evidence.  BD objects to this Interrogatory as vague to the extent it seeks identification of a person "most" knowledgeable concerning all of the listed topics for each of the BD Instruments, BD ProbeTec Assays, and BD Penetrable Cap Products.  BD further objects to the breadth of the identified subject matters.  BD further objects to the extent this Interrogatory seeks information not within the possession, custody, or control of BD.  BD also objects to the phrase "dates of tenure" as vague and ambiguous.  BD objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine and/or any other applicable privilege.  BD further objects that this Interrogatory as compound.

Subject to the foregoing specific objections, and without waiver of the foregoing general objections, BD responds as follows:  [listing names and job titles for individuals knowledgeable about VIPER XTR in tabular format]

### A.    Gen-Probe's Reasons to Compel Further Response:

Through its Interrogatory No. 5, Gen-Probe seeks to obtain information on the identities of the persons most knowledgeable about various aspects of BD's development, manufacturing and sales of products relating to those accused of infringing Gen-Probe's patents in this case. This is clearly relevant and discoverable information.  However, in response, BD provided names and job titles only of the individuals responsible for various aspects of BD's Viper XTR instrument system.  After meeting and conferring with BD, BD acquiesced to providing, by May 14, 2010, the same information for BD's earlier iterations of the Viper XTR instrument, including the Viper AP and Viper ER.  However, BD inexplicably refuses to produce like information on persons most knowledgeable about the various aspects of its early ProbeTec ET system.

Again, BD's refusal to produce this relevant information in response to Gen-Probe's Interrogatory No. 5 is unjustified.  The ProbeTec ET system is an instrument directly implicated by Gen-Probe's asserted '200 patent – as set forth in Gen-Probe's Complaint and disclosure of

CASE NO. 09-CV-2319 BEN (NLS)

1    infringement contentions under Patent Local Rule 3.1, BD's prescription for the use of bleach in

2    connection with running assays on that instrument infringes the '200 patent.  BD does not

3    dispute that the ProbeTec ET system is implicated in the case and has already agreed to produce

4    other relevant information relating to that instrument.  Accordingly, BD cannot meet the "heavy

5    burden of showing why discovery should be denied."  *Blankenship v. Hearst Corp.*, 519 F.2d

6    419 (9th Cir. 1975); *see also O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366

7    (Fed. Cir. 2006) (noting in patent litigation the "broad discovery regime created by the Federal

8    Rules.").

9            **B.     BD's Basis For Objecting To Responding Further:**

10           BD's ProbeTec ET System is not accused of infringing any of the five Gen-Probe patents

11   relating to automation technology.  Nor are any BD caps or assay kits used with the ProbeTec ET

12   System accused of infringing Gen-Probe's penetrable cap patents.  The relevance of the

13   ProbeTec ET System to Gen-Probe's claims is limited to BD's references in product manuals to

14   the use of bleach, which Gen-Probe has identified as a basis for its contention of infringement of

15   the '200 patent (the "Bleach patent").  As noted above, BD has marketed the ProbeTec ET

16   System, including its references to the use of bleach, since 1998.  BD has already agreed to

17   provide Gen-Probe with all requested information and documents concerning the use of bleach in

18   connection with the ProbeTec System.

19           Despite the limited relevance of the ProbeTec ET System, and the complete irrelevance

20   of the design and manufacture of the system, Gen-Probe's Interrogatory No. 5 and its document

21   requests broadly seek information concerning all aspects of the "design, development,

22   manufacturing, marketing, sales, distribution, and regulatory affairs" related to the ProbeTec ET

23   System.  Gen-Probe has not identified any bases for seeking information about the ProbeTec ET

24   System beyond the narrow aspect of that system that Gen-Probe has accused of infringing the

25   '200 patent. Because Gen-Probe's request directed to all aspects of the ProbeTec ET system is

26   overbroad and not likely to lead to the discovery of admissible evidence, Gen-Probe's motion

27   should be denied.

28

CASE NO. 09-CV-2319 BEN (NLS)

C.      **Gen-Probe's Reply:**

BD agrees that "all requested information and documents concerning the use of bleach in connection with the ProbeTec System" is relevant and discoverable.  BD also admits that it instructs users of the ProbeTec ET System to use bleach in its "product manuals."  The necessity of the use of bleach, its operation, and its effects, is all information relating to the use, operation and efficacy of the ProbeTec ET system itself, reflected in the design, development, manufacture, regulatory approval, marketing and sales of that system and associated assays.

Gen-Probe's Interrogatory No. 5 seeks the identities of persons most knowledgeable at BD about these various aspects of the ProbeTec ET instrument system so that Gen-Probe can know in whose files it should look and who it should ask what questions germane to its infringement case under the '200 patent.  BD's resistance to making this disclosure in response to Interrogatory No. 5 is completely baseless.

**IV.    DISPUTE OVER GEN-PROBE'S INTERROGATORY NO. 6 / REQUEST FOR PRODUCTION NO. 20**

**Gen-Probe's Interrogatory No. 6:**  Please identify by address, contact phone number, and contact name the worldwide locations (including but not limited to the United States) of all BD Viper XTRs that You have made, offered to sell, or sold within the United States.

**BD's Response To Interrogatory No. 6**:  BD objects to this Interrogatory as overly broad and unduly burdensome to the extent it seeks identification of each and every BD customer in possession of a Viper XTR system, as such information is not relevant to any claim or defense asserted in this action.  BD further objects to disclosing, in response to this Interrogatory, sensitive and trade secret information concerning BD's customers and/or information protected by BD's confidentiality obligations to third-parties prior to the entry of an appropriate confidentiality order.

Subject to the foregoing specific objections, and without waiver of the foregoing general objections, BD responds as follows:  BD states that, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, the information responsive to this Interrogatory may be ascertained readily from documents that will be produced by BD in response to Gen-Probe's First Set of Requests for Production of Documents, served on January 6, 2010.

***

**Gen-Probe's Request For Production No. 20:**  Documents sufficient to identify by address, contact phone number, and contact name the worldwide locations (including but not limited to the United States) of all BD Viper XTRs that You have made, offered to sell, or sold within the United States.

**BD's Response To Request For Production No. 20**:  BD objects to this request as harassing, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**A.    Gen-Probe's Reasons to Compel Further Response:**

As set forth above, Gen-Probe asserts that BD is liable for infringing eight different patents, both directly and indirectly.  With respect to its claim of indirect infringement, Gen-Probe alleges that BD is liable as a contributory infringer and for inducing others to infringe the various method claims of those patents.  Thus, BD's liability depends in part on proof that it sold "infringing devices to customers who use them in a way that directly infringes the method claim."  *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).  Because BD's customers that use the accused Viper XTR are the *direct* infringers, the full identities of BD's customers, including contact information, is directly and highly relevant to this case.

1    And yet, BD has inexplicably refused to supply this very information in response to Gen-

2    Probe's Interrogatory No. 6 and Request For Production No. 20.  Although BD's interrogatory

3    response states that it will produce documents containing this identifying information, BD's

4    response to Gen-Probe's corresponding document request reverses this position on grounds that

5    the request is somehow "harassing" and irrelevant.  After several meet-and-confer efforts, BD

6    has acquiesced to providing, by May 14, 2010, a list of industry customers in possession of Viper

7    XTR instruments in a supplemental response to Interrogatory No. 6, along with corresponding

8    documents in response to Request For Production No. 20.  However, BD stills refuses to disclose

9    its customer *contact information* (*e.g.*, principal contact name, telephone number and address).

10    BD's refusal to provide this information is unjustified.  BD has identified no undue

11    burden associated with producing customer contact information, which is likely readily used in

12    BD's day-to-day operations and obtainable directly from BD's own sales databases.   BD

13    certainly knows who its own customers are and how to contact them.  In fact, the burden BD

14    faces in compiling its customer contact list for purposes of responding to Interrogatory No. 6

15    pales in comparison with the burden Gen-Probe will endure if it is forced to (1) wait for months

16    before obtaining any response and then (2) sift through thousands of pages of BD's eventual

17    document production in an effort to identify and track down that information.  And, to the extent

18    BD considers the information "sensitive," a default protective order is in place that will maintain

19    that contact information in confidence and prevent it from being used for purposes other than this

20    litigation.  *See* Patent L.R. 2.2.  In short, BD's only "excuse" for refusing to answer Interrogatory

21    No. 6 is that it is arbitrarily and improperly seeking to limit the scope of discovery.

22    At the same time, obtaining contact information regarding customers of BD's Viper XTR

23    systems and associated molecular diagnostic assays is an essential step in the discovery process.

24    Without such information, for example, Gen-Probe cannot efficiently proceed with third party

25    witness interviews or formal third party discovery that will prove that BD is infringing the

26    patents-in-suit and help to establish the full extent of the damages for which BD is liable.  Courts

27    have routinely compelled production of customer contact information in similar circumstances.

28    *Sanbrook v. Office Depot*, Case No. C 07-5938, 2009 WL 840019, at *1 (N.D. Cal. March 30,

2009) (ordering discovery of customers' contact information because the customers were "percipient witnesses"); *Tierno v. Rite Aid Corp.*, Case No. C 05-02520, 2008 WL 3287035, at *2 (N.D. Cal. Jul. 31, 2008) (compelling interrogatory responses seeking "name and contact information" for witnesses because such "contact information… is critical to Plaintiff's case"); *see also*, *Yamashita v. Wilbur Ellis Co.*, Case No. C 06-01690, 2006 WL 1128041, at *1 (N.D. Cal. Apr. 26, 2006) (compelling discovery of "lists of all customers who purchased" patented products).

BD's customer contact information is similarly relevant and discoverable in this case. By attempting to evade its discovery obligations, BD impedes Gen-Probe's ability to proceed with the investigation of its claims. But BD cannot meet its burden of showing that this discovery should not be allowed. *Calderon v. United States*, 2008 WL 1787497, at *2 (S.D. Cal. Apr. 15, 2008). Therefore, the Court should compel BD's complete response to Interrogatory No. 6, providing not only the names, but also the full contact information (*e.g.*, contact person name, telephone number, and address) for each customer of BD's infringing Viper XTR instrument. To the extent not duplicative, the Court should also compel BD to produce documents relating to the same in response to Gen-Probe's Request For Production No. 20.

## B.    BD's Basis For Objecting To Responding Further:

BD has no objection to providing Gen-Probe's counsel with the identities and locations of corporate entities that currently possess or use BD Viper XTR systems, provided those customers are protected from unnecessary harassment or intimidation. See digEcor, Inc. v. e.Digital Corp., 2008 WL 4335539, *5 (D. Utah 2008) (discovery requests to customers present a "significant risk that customer relationships would be disrupted"). BD has agreed to supplement its answer to Interrogatory No. 6 to provide such information on or before May 14, 2010. To date, however, Gen-Probe has not disclosed the extent to which it plans to contact BD's customers, or for what purpose. Instead, Gen-Probe has suggested that it plans to conduct informal "interviews." BD's customer relationships are valuable to BD and could be jeopardized by unnecessary or harassing letters or calls from adverse counsel requesting "interviews"

1    concerning the customers' use of the BD's Viper XTR products.[6]   See id.   Therefore, in

2    connection with its agreement to provide customer information, BD requests that the Court

3    impose an obligation on Gen-Probe not to contact or subpoena any of BD's customers without

4    good cause and either (a) approval of BD or (b) leave of Court.  See Murata Mfg. Co., Ltd. v. Bel

5    Fuse, Inc., 2004 WL 1194740, *5-*6 (N.D. Ill., May 26, 2004) (prohibiting patent plaintiff from

6    contacting the customers of its adversary) (and cases cited).

7          Even under a protective order, however, there is no reason that BD should be compelled

8    to provide Gen-Probe with names and phone numbers for individual employees of its customers.

9    Gen-Probe has no legitimate need for names and contact information of any individual

10   employees.  Gen-Probe likely has its own contacts at each of BD's customer, which in some

11   cases may be the same individual(s).  Further, it would be improper ethically for Gen-Probe to

12   contact directly any individual employee of any of BD's customers concerning this litigation to

13   the extent that customer is represented by in-house or outside counsel.  Under the order requested

14   by BD, Gen-Probe will have ample opportunity to take necessary discovery from BD's

15   customers, if any is required, without any need to harass the individual employees that serve as

16   BD's customer contacts.  See Murata, 2004 WL 1194740, *5-*6; digEcor, 2008 WL 4335539,

17   *5.

18         For these reasons, Gen-Probe's motion to compel BD to provide names and phone

19   numbers of individual employees of its customers should be denied.

20   **C.      Gen-Probe's Reply:**

21         In resisting disclosure of the contact information for the *direct infringers* who practice the

22   infringing methods of Gen-Probe's asserted patents using assays and instruments supplied by

23   BD, BD unilaterally seeks to restrict the scope of what it deems "relevant," and to handcuff Gen-

24   Probe in the process.  Those customer contacts are the best source of information revealing BD's

25   communications constituting the alleged inducement of infringement of the asserted patents and

26

27   [6] Because of the extremely short time frame in which BD was forced to respond to Gen-Probe's motion,
     BD was not able to provide declarations from BD witnesses concerning the factual assertions made in this

28   statement.  Should the Court require further evidence, BD is willing to provide declarations for the
     Court's consideration.

1    resultant damages to Gen-Probe.   Indeed, the Federal Circuit has held that testimony from
2    directly-infringing customers is helpful for the fact-finder, not something to be avoided.   *See*
3    *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (testimony
4    from users of infringing method is relevant to prove direct infringement in an inducement claim).
5    BD's cited cases of *digEcor, Inc. v. e.Digital Corp.*, 2008 WL 4335539 (D. Utah 2008), and
6    *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.,* 2004 WL 1194740 (N.D. Ill., May 26, 2004), are
7    distinguishable on this critical point and do not support BD's opposition.   Indeed, the *digEcor*
8    court (which cited the *Murata* decision), deliberating discovery in a breach of contract action,
9    ultimately and correctly allowed plaintiff to proceed with discovery requests directly to the
10   defendant's customers.   2008 WL 4335539 at *5.   *Murata* itself, though a patent infringement
11   case, dealt with customer contacts only for purposes of gleaning evidence of "commercial
12   success" – not direct infringement – in which the requesting party was "unable to cite a single
13   case in which testimony from a customer of the alleged infringer was used to show commercial
14   success or long-felt need" and further had the ability to obtain the sought-after evidence
15   elsewhere.  2004 WL 1194740 at *6.

16        That is not the case here.   Unlike in *Murata*, here, BD makes no real claim that its
17   relationships with its customers will be harmed in any way by Gen-Probe's efforts to discover
18   the information those customers have regarding BD's inducement and the customer's direct
19   infringement.   Accordingly, the Court should compel BD to disclose its customer contact
20   information in response to Interrogatory No. 6 and to produce non-cumulative documents
21   relating to the same in response to Request For Production No. 20.  Any concerns that BD might
22   have regarding misuse of that information can be appropriately addressed by designating that
23   information as "Highly Confidential," and thus "outside counsel only," under the protective
24   order.
25        //
26        //
27        //
28        //

1   Respectfully submitted,

2   Dated: April 19, 2010                          LATHAM & WATKINS LLP

3
                                                    By: s/Alexander E. Long
4                                                       alexander.long@lw.com

5                                                    Attorneys for Plaintiff and Counterdefendant
                                                      GEN-PROBE INCORPORATED
6
     Dated: April 19, 2010                          FOLEY HOAG LLP
7

8                                                    By: s/ Donald Ware (with permission)
                                                        drw@foleyhoag.com
9

10                                                   Attorneys for Defendant and
                                                      Counterclaimant BECTON, DICKINSON
11                                                    AND COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 09-CV-2319 BEN (NLS)

1
2

## CERTIFICATION OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT

3

Plaintiff Gen-Probe Incorporated ("Gen-Probe") and Defendant Becton, Dickinson and

4

Company ("BD") hereby certify that they have complied with the meet and confer requirement

5

of L.R. 26.1(a).

6

Dated: April 19, 2010                        LATHAM & WATKINS LLP

7

                                             By: s/Alexander E. Long

8

                                                 alexander.long@lw.com

9

                                             Attorneys for Plaintiff and Counterdefendant
                                             GEN-PROBE INCORPORATED

10

Dated: April 19, 2010                        FOLEY HOAG LLP

11

12

                                             By: s/ Donald Ware (with permission)

13

                                                 drw@foleyhoag.com

14

                                             Attorneys for Defendant and
                                             Counterclaimant BECTON, DICKINSON

15

                                             AND COMPANY

16
17
18
19
20
21
22
23
24
25
26
27
28

CASE NO. 09-CV-2319 BEN (NLS)

## PROOF OF SERVICE

I am employed in the County of San Diego, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Latham & Watkins LLP, 12636 High Bluff Drive, Suite 400, San Diego, CA 92130.

On April 19, 2010, I served the following document described as:

JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE

by serving a true copy of the above-described document in the following manner:

### BY ELECTRONIC FILING

I am familiar with the United States District Court, Southern District of California's practice for collecting and processing electronic filings.  Under that practice, documents are electronically filed with the court.  The court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case.  The NEF will constitute service of the document.  Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.  Under said practice, the following CM/ECF users were served:

| | |
|---|---|
| Boris Zelkind, Esq. | Donald R. Ware, Esq. |
| boris.zelkind@kmob.com | dware@foleyhoag.com |
| Erik T. Anderson, Esq. | Barbara A. Fiacco, Esq. |
| erik.anderson@kmob.com | bfiacco@foleyhoag.com |
| Knobbe, Martens, Olson & Bear LLP | Brian C. Carroll, Esq. |
| 550 West C Street, Suite 1200 | bcarroll@foleyhoag.com |
| San Diego, CA 92101 | Foley Hoag LLP |
| | Seaport West |
| | 155 Seaport Boulevard |
| | Boston, MA 02210-2600 |

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 19, 2010, at San Diego, California.

s/ Alexander E. Long
alex.long@lw.com

NSD\130586.5