# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEN-PROBE INCORPORATED,<br><br>    Plaintiff,<br>v.<br><br>BECTON, DICKINSON AND COMPANY,<br><br>    Defendant.<br>_____<br>BECTON, DICKINSON AND COMPANY,<br><br>    Counterclaimant,<br>v.<br><br>GEN-PROBE INCORPORATED,<br><br>    Counterdefendant.<br>_____ | Civil No. 09cv2319 BEN (NLS)<br><br>**ORDER GRANTING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1**<br><br>[Doc. No. 39] |

   The parties filed a joint motion asking the court to determine four issues arising out of plaintiff Gen-Probe Incorporated's (Gen-Probe) first set of interrogatories (ROGs) and first set of requests for productions (RFPs). Defendant Becton-Dickinson (BD) agreed to supplement some of it ROG responses and produce some previously disputed categories of documents. The following issues remain in dispute: (1) Whether BD should be able to conduct discovery before responding to a contention ROG regarding an affirmative defense; (2) Whether the "how" and "what" involved in BD's learning about Gen-Probe's patents is protected by privilege; (3) Whether discovery related to a non-accused product is relevant; and (4) Whether BD should provide the internal contact information of its customers.

**1.     ROG No. 1: Contention Interrogatory.**

In ROG No. 1, Gen-Probe asks BD to state with particularity all facts BD relies on in support of its tenth affirmative defense that asserts "waiver, laches, and/or estoppel," and to identify all documents that support this defense. BD has provided or will provide facts regarding delay and prejudice, which only relate to its laches' defense. Gen-Probe seeks to compel BD to provide now all facts relating to its waiver and estoppel affirmative defenses. It argues that BD has not set forth any facts to show that it has a "facially plausible" theory to support the waiver and estoppel defenses and that BD should not be allowed to fish for discovery under the guise of a baseless defense. If no such facts support these defenses, Gen-Probe asks that BD affirmatively state that no such facts exist, as a prelude to withdrawing those defenses.

BD objects to further responding at this point to this contention interrogatory because it cannot provide any further information without obtaining discovery from Gen-Probe. BD says it needs, for example, information regarding when Gen-Probe first became aware of BD's use of the accused method, and that discovery is needed to determine the level of evidentiary prejudice that resulted from Gen-Probe's delay in bringing this claim. Without Gen-Probe first producing information related to the '200 patent, BD says it cannot determine whether key documents from the early 1990s has been destroyed.

Federal Rule of Civil Procedure 33(a)(2) says that a court may order that a contention interrogatory "need not be answered until designated discovery is complete." Several courts have found contention interrogatories served toward the beginning of a litigation to "be of questionable value to the goal of efficiently advancing the litigation." *In re Ebay Seller Antitrust Litig.*, 2008 U.S. Dist. LEXIS 102815, *6 (N.D. Cal. Dec. 11, 2008); *see In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 338 (N.D. Cal. 1985) (placing burden of justification on party who propounds contention interrogatories that track the allegations in an opponent's pleading "before substantial documentary or testimonial discovery has been completed"). For the propounding party to meet its burden, the party must show that

> answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56. A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered. Rather, the propounding party must present specific, plausible grounds for believing that securing


> early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure.

*Id.* at 338-339.

This court finds that Gen-Probe did not sufficiently tailor its question and show that an early response would promote any of the goals of the Federal Rules of Civil Procedure.  Along with the facts that the parties have not yet completed substantial discovery, and because BD does not object to responding further to this contention interrogatory as discovery progresses, the court sustains BD's objections and denies Gen-Probe's request to compel BD to respond further to ROG no. 1 without the benefit of further discovery.

**2.    ROG No. 4: How BD Learned About Gen-Probe's Patents.**

Gen-Probe seeks facts regarding how BD first became aware of six of the patents asserted in this lawsuit.  BD disclosed that its Senior Intellectual Property Counsel, Allan Kiang, first learned of six of the patents shortly after each was issued.  But BD did not disclose other facts related to that first knowledge, such as how it acquired the information and what actions, if any, it took.  BD argues this information is protected by the attorney-client privilege because the "how" and the "what" of how BD learned about each patent involves information protected by the attorney-client or work product privileges.  It also argues this information is not relevant to any of Gen-Probe's claims.  Gen-Probe replies that these are only facts and the privilege does not apply to them.

"Confidential information essentially is information 'of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege.'"  *Hewlett-Packard Co. v. EMC Corp*., 330 F.Supp.2d 1087, 1094 (N.D. Cal.  2004) (citations omitted).  The attorney-client privilege extends to communications between client and attorney for the purpose of obtaining legal advice; it does not extend to foundational questions that do not require the disclosure of any legal advice sought or provided:

> [The] protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different  thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981) (citation omitted); *see Methode Elecs., Inc. v. Finisar Corp.*, 205 F.R.D. 552, 556 (N.D. Cal. 2001); *see also Fox v. California Sierra Financial Services*, 120 F.R.D. 520 (N.D. Cal. 1988) (The fact of a privileged communication is not itself privileged.). As for work product protection, that privilege applies only to materials "prepared in anticipation of litigation[.]" Fed. R. Civ. Proc. 26(b)(3)(A).

In its opposition, BD discloses some facts regarding how Mr. Kiang learned of the six patents that had not previously been disclosed. This information, and any other responsive information that has yet to be disclosed, is relevant to Gen-Probe's claim of willful infringement and its claim that BD induced others to infringe the method claims of the asserted patents. BD must now disclose the facts disclosed in the joint motion, as well as any other non-privileged foundational facts, that go to the "how" and the "what" involved in its learning of six of Gen-Probe's patents, in a supplemental interrogatory response verified by BD under oath.[1] The court, therefore, overrules BD's objections, and orders BD to provide a supplemental response including all non-privileged foundational facts.[2]

**3.    ROG No. 5: Discovery Related to BD's ProbeTec ET System.**

Gen-Probe seeks information on the identities of the persons most knowledgeable about various aspects of BD's development, manufacturing and sales of products accused of infringing the patents-in-suit. BD has provided information regarding its Viper XTR, Viper AP and Viper ER instrument systems. It has produced, however, only limited information on its ProbeTec ET system, and argues the broad information sought is not relevant to that system. Gen-Probe argues that the ProbeTec ET system is directly implicated by the asserted '200 patent (a.k.a. "Bleach patent"), and that BD has already agreed to produce other relevant information relating to that instrument. BD objects that the design and manufacturing of the system are irrelevant, and argues that it has already produced the information related to the allegation that a narrow part of the ProbeTec ET system infringed the '200 patent. It says

---

[1] Should BD claim privilege for any confidential communications or work product that incorporate any of the non-privileged foundational facts, it need not produce a privilege log, as the parties agreed to not produce a privilege log for this type of information. *See* Joint R.26(f) Report, Dkt. No. 19, pp.8-9.

[2] To the extent ROG no. 4 calls for facts surrounding a potential defense to willfulness based on opinion of counsel, the timing of discovery of facts included in communications that may be contained in documents related to opinion of counsel is governed by Patent Local Rule 3.8.

the potential relevance is limited to BD's references in product manuals to the use of bleach in connection with the ProbeTec system.  Gen-Probe counters the "necessity of the use of bleach, its operation, and its effects, is all information relating to the use, operation and efficacy of the ProbeTec ET system itself, reflected in the design, development, manufacture, regulatory approval, marketing and sales of that system and associated assays." Jt. Mtn. p.17.

Rule 26(b) provides that any party may obtain discovery on any matter relevant to a party's claim or defense.  Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 26(b).  Here, the court finds that all the categories of information Gen-Probe seeks regarding the ProbeTec ET system are relevant to this action, overrules BD's relevance objection and orders it to respond to the entirety of ROG no. 5 with respect to its ProbeTec ET system.

**4.       ROG No. 6 and RFP No. 20: Internal Contact Information of BD's Customers.**

In these discovery requests, Gen-Probe seeks the internal contact information for BD's customers who bought its Viper XTR instruments.  BD has agreed to provide the list of customers, but not the principal contact's name, telephone number and address.  Gen-Probe argues this information is relevant to its claim of indirect infringement on behalf of BD and because BD's customers who use the accused Viper XTR are the direct infringers.  BD says it will provide the information if Gen-Probe assures BD it will not unnecessarily harass or intimidate its customers.  Also, BD says that before contacting any customers, Gen-Probe should have (1) good cause; and (b) either BD's approval or leave of court.

The court overrules BD's objection that the information requested, without further assurance from Gen-Probe, is harassing and intimidating.  First, providing Gen-Probe with the customer's principal contact information may in fact be less "harassing" than only providing the name of the customer.  By providing a direct contact, Gen-Probe can make a discrete inquiry with a single, direct contact, as opposed to conducting its own investigation of the customer that might result in it having to deal with multiple people.  Also, Gen-Probe's investigation for a company contact could very likely result in Gen-Probe being put into contact with the name of the person responsible for dealing with BD, which may, in fact, be the name of BD's principal contact.  Further, to the extent that BD has concerns

that discrete communications with its principal contact might be "harassing" or "intimidating," BD can designate the information as "Highly Confidential" under the protective order, so that any misuse of that information can be addressed through the procedures and remedies available under the protective order. BD, therefore, shall respond to ROG no. 6 and produce non-cumulative documents relating to the same in response to RFP no. 20.

**ORDER.**

For good cause shown, the court **GRANTS** the parties' joint motion for determination of discovery dispute no. 1. BD must provide supplemental responses to Gen-Probe as specified in this order no later than **May 28, 2010**.

**IT IS SO ORDERED.**

DATED:  May 19, 2010

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court