**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEN-PROBE INCORPORATED, a Delaware corporation, </br></br>  Plaintiff,</br>v.</br></br>BECTON, DICKINSON AND COMPANY, a New Jersey corporation,</br></br>  Defendant.</br></br>BECTON, DICKINSON AND COMPANY, a New Jersey corporation,</br></br>  Counterclaimant,</br>v.</br></br>GEN-PROBE INCORPORATED, a Delaware corporation,</br></br>  Counterdefendant. | Civil No. 09cv2319 BEN (NLS)</br>Civil No. 10cv0602 BEN (NLS)</br></br>**ORDER DETERMINING JOINT MOTION FOR DISCOVERY DISPUTE No. 4, GRANTING DEFENDANT'S MOTION TO COMPEL**</br></br>[Doc. No. 74] |

The parties filed a joint motion in this patent suit asking the court to determine two issues arising out of Defendant Becton-Dickinson's (BD) first set of requests for production of documents (RFPs) to plaintiff Gen-Probe Incorporated (Gen-Probe). BD seeks to compel further responses to several RFPs in light of Gen-Probe's two principal objections: certain RFPs are premature, and others are protected by the right to privacy or work-product privilege. As to the RFPs that Gen-Probe considers premature, it has offered to provide more complete responses to those ROGs by January 1, 2011. Swinton Decl. ¶ 2. BD's counsel rejected the offer and to date, has not counter-proposed a date for response. *Id.*

### 1. **RFPs that Gen-Probe Objects to as Premature.**

RFPs 15, 16, 56, 57, 94 and 95 request documents concerning any alleged unexpected results and secondary considerations claimed in the Process, Cap and Bleach Patents. RFPs 166, 167 and 168 request documents related to Gen-Probe's formulation or calculation of its damages claim, including documents relating to lost profits, lost sales, price erosion, lost customers and diminished purchases.

Gen-Probe objects that these RFPs are premature and are actually contention interrogatories disguised as document requests. It says it cannot provide a response until later in the discovery process, after it determines whether the secondary considerations are relevant and which claim it will make for damages. Regarding damages, Gen-Probe argues it needs further information from BD to determine whether it will pursue lost profits or a reasonable royalty. Gen-Probe argues that because lost profits may never be relevant to this litigation, it should not have to produce that information in discovery until it determines that it will pursue lost profits as opposed to a reasonable royalty rate. For similar reasons--and for the same reasons asserted in the third joint motion to determine a discovery dispute--Gen-Probe argues that the RFPs relating to secondary considerations are also premature, namely because BD must first present a prima facie case for obviousness before obtaining this discovery.

BD argues that Gen-Probe is not entitled to wait until January 2011 to withhold discovery on damages or secondary considerations relevant to BD's obviousness defense. It argues that discovery has not been stayed or delayed and there is no good cause to let Gen-Probe put discovery on hold pending its future litigation choices. BD argues that Gen-Probe's production of information is not contingent upon any further disclosure or information from BD. It also reiterates its arguments from the third joint motion that it need not first establish a prima facie case of obviousness just to get discovery on the topic.

For the same reasons stated in the court's order determining the parties' third joint motion regarding a discovery dispute, the court overrules Gen-Probe's objections and orders that it respond to the discovery. *See* Dkt. No. 75, Sept. 7, 2010. Regarding BD's RFPs seeking information on unexpected results and secondary considerations, these RFPs are not premature because BD has no obligation under the discovery rules to make a prima facie case for obviousness before obtaining discovery on the matter. *See McKesson Info. Solutions LLC v. Epic Sys. Corp.*, 242 F.R.D. 689, 692 (N.D. Ga. 2007) (holding that a defendant need not establish a prima facie case of invalidity before

obtaining discovery on the plaintiff's patent).  Further, the court overrules Gen-Probe's objection that these RFPs are akin to contention interrogatories because the case is no longer in the beginning stages of litigation.  Requiring Gen-Probe to provide this information sooner rather than later will also economize time and costs related to BD's depositions in this subject area.  As stated in the Sept. 9 Order, however, BD will first have to identify which of its prior art references it will rely on regarding obviousness so that Gen-Probe can respond to the discovery requests with respect to those references.

Regarding the RFPs seeking information on Gen-Probe's damages claim, so long as Gen-Probe does not exclude lost profits as a component of its damages claim, lost profits remain a claim at issue in this case and discovery related to lost profits is fair game.  *See* Fed. R. Civ. Proc. 26(b)(1).  Gen-Probe has not requested, nor has stated good cause for, a phased discovery plan in this case regarding damages. Lost profits, therefore, remains a claim at issue and BD is entitled to timely discovery on the matter. Further, in the interest of economy, depositions for both sides will proceed more timely and efficiently if BD has had the opportunity to review Gen-Probe's discovery responses before taking or defending depositions of any sales and financial employees.  Gen-Probe's objections, therefore, are overruled.

**2.     RFPs Allegedly Protected by Work Product Privilege or Privacy.**

In RFPs 108, 109, 110 and 114, BD seeks Gen-Probe's documents regarding its agreements with named inventors, any agreements between or among named inventors, agreements between Gen-Probe and any entity employing or affiliated with a named inventor, and documents showing all payments paid by Gen-Probe to the named inventors.  Gen-Probe objects to RFPs 108 and 114 on grounds that include privilege and because they call for information protected by federal and state privacy laws.

After counsels' meet and confer sessions to attempt to resolve these issues, as Gen-Probe understands it, the only documents that BD still seeks as part of these RFPs are the "extra-employment" agreements between Gen-Probe and any of the named inventors regarding compensation to those individuals.  Gen-Probe says that the only documents in its possession responsive to this narrowed request are consultant agreements with the named inventors regarding their participation in this litigation.  It argues these agreements are not discoverable now because they are the work product of Gen-Probe and its counsel, and cannot be produced until these people are summoned to be deposed, designated as experts, or are otherwise designated to testify in this matter.  In an effort to settle this

dispute with BD, Gen-Probe proposed that both parties produce evidence of "extra-employment" compensation and agreements with any potential fact witnesses on a mutual basis at an agreed time. BD rejected the proposal. Gen-Probe still urges the court to adopt it, however, because the work-product doctrine applies to both parties, and ordering a mutual exchange of the "extra-employment" and related agreements provides a reasonable solution.

BD responds that Gen-Probe cannot escape its discovery obligations by demanding that BD first agree to produce documents that Gen-Probe has not yet even requested in discovery. It argues the documents that Gen-Probe wants from BD have nothing to do with the documents BD requested from Gen-Probe, because Gen-Probe's agreements are with fact witnesses while BD's agreements are with non-testifying expert consultants who are not fact witnesses. BD also points out that the documents Gen-Probe wants from BD--agreements with non-testifying expert consultants--are protected from discovery as work product. In contrast, BD argues that the documents requested from Gen-Probe are not work product because the named inventors are all fact witnesses in this case. BD also doubts that the only responsive documents Gen-Probe has are the consultant agreements. For example, RFP 110 requests all documents concerning Gen-Probe's agreements with third party employers of named inventors, such as RELA, the entity Gen-Probe hired to design, build and develop the automation patents.

### A.     Work Product Doctrine.

In general, documents prepared in anticipation of litigation or for trial by a party or its representative are protected by the work product doctrine and are not discoverable. Fed. R. Civ. Proc. 26(b)(3). While Gen-Probe argues that the only documents that remain at issue in these RFPs are consultant agreements with the named inventors prepared with regard to this litigation, BD explains that the scope of the RFPs is actually broader. The court also understands the RFPs to seek information that go beyond what Gen-Probe identifies as "extra-employment" agreements.

The court overrules Gen-Probe's objections to these RFPs on the basis of work product privilege. The documents requested involve relevant materials related to fact witnesses in this case. Gen-Probe has known this from the inception of the litigation, as both parties listed the named inventors in their initial disclosures as potential fact witnesses, and the court's Case Management Order--which

the court based on the parties' Joint Rule 26 Report--specially provided that BD could conduct an additional 15 depositions of the named inventors. Because not all the materials requested in these RFPs appear to relate to documents prepared in anticipation of litigation or for trial, they involve fact witnesses in this case, and they are relevant to the claims and defenses at issue in this case, the documents related in the RFPs are discoverable at this time.

### B.   Privacy Objection.

In federal question cases, federal law regarding privilege applies. Fed. R. Evid. 501; *see U.S. v. Zolin*, 491 U.S. 554, 562 (1989); *see also Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1492 (9th Cir. 1989). Federal law recognizes "a constitutional right to privacy -- more specifically, a constitutional right to nondisclosure of . . . personal information." *Charles O. Bradley Trust v. Zenith Capital L.L.C.*, 2005 U.S. Dist. LEXIS 35562, *5-*6 (N.D. Cal. 2005). Here, however, Gen-Probe asserted that the sole basis for its objection to RFP 108 was based on the right to privacy under the California constitution. Jt. Mtn, p.19. Also, one of Gen-Probe's objections to RFP 114 is based on privacy.

California grants a limited, and not absolute, right to privacy. *Moskowitz v. Superior Court*, 137 Cal. App. 3d 313, 316 (1982). Personal financial information may be protected by this right to privacy. *Id.* at 315-316. The substantive right to financial privacy extends to individuals in litigation. *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999). "Generally, an entity will have less privacy rights than an individual." *Id.* (citing *Amer-Medical Corp v. W.C.A.B.*, 42 Cal. App. 4th 1260, 1286-1288 (1966)). The asserted privileges that protect financial and proprietary information are subject to balancing the needs of the litigation with the sensitivity of the information and records sought. *Davis*, 43 F. Supp. 2d at 1110. (citing *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 657 (1975)). Where disclosure is appropriate, the scope of disclosure must be narrowed only to the extent necessary to resolve the lawsuit. *Id.* (citing *Moskowitz*, 137 Cal. App. 3d at 316).

Where the requested documents clearly ask for private information, the burden is on the requesting party to show the information is relevant to the needs of the case "and that the information needs of the case outweigh the need for non-disclosure." *Id.* at 1111 (citing *Britt v. Superior Court*, 20 Cal. 3d 844, 859 (1978)). But where it is questionable that the information is private, the party asserting

the privilege has the initial burden to establish the existence of the privilege, then, the burden shifts to the party seeking the information to justify the need for the information. *Id.* Documents presumed to be protected by financial privacy include "documents generated in one's business affairs, e.g., contracts, business records and the like that have not received widespread dissemination, or have not been publicly filed." *Id.*

Here, the court agrees with BD that the documents requested are relevant to issues in this case, including compensation from Gen-Probe to the named inventors, the interests of the named inventors in Gen-Probe, the value of Gen-Probe's patents, and the potential bias or credibility of the named inventors. While these documents appear to be private in that they have apparently not been made public or disseminated to many people, they are relevant and will help in resolving this lawsuit. Further, if produced under the protective order already in place in this case, the disclosure will be narrowly tailored to the extent necessary. For these reasons, the court overrules Gen-Probe's privacy objections and orders that Gen-Probe respond to the RFPs it objects to on the basis of privacy.

### ORDER

1. BD shall, by **October 8, 2010**, identify to Gen-Probe which of its prior art references it will rely on regarding obviousness with respect to the information requested in RFPs 15, 16, 56, 57, 94 and 95. BD may supplement or amend its identification of prior art references within 30 days of receiving Gen-Probe's discovery responses.

2. Gen-Probe shall, by **November 8, 2010**, provide responses to BD's RFPs 15, 16, 56, 57, 94 and 95. To the extent Gen-Probe discovers any additional information after that time, Gen-Probe shall supplement its response as that information becomes available.

3. Gen-Probe shall, by **October 13, 2010**, provide responses to BD's RFPs 166, 167 and 168 and BD's RFPs 108, 109, 110 and 114.

**IT IS SO ORDERED.**

DATED: September 13, 2010

Hon. Nita L. Stormes
U.S. Magistrate Judge