1
2
3
4
5
6
7
8                   **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   GEN-PROBE INCORPORATED, a Delaware )        Civil No. 09cv2319 BEN (NLS)
     corporation,                       )        Civil No. 10cv0602 BEN (NLS)
                                         )
12                          Plaintiff,   )        **ORDER DETERMINING JOINT**
     v.                                  )        **MOTION FOR DISCOVERY DISPUTE**
13                                       )        **No. 9, GRANTING PLAINTIFF'S**
     BECTON, DICKINSON AND COMPANY, a )           **MOTION TO COMPEL**
14   New Jersey corporation,             )
                                         )        [Doc. No. 166]
15                          Defendant.   )
     _____ )
16                                       )
     BECTON, DICKINSON AND COMPANY, a )
17   New Jersey corporation,             )
                                         )
18                          Counterclaimant, )
     v.                                  )
19                                       )
     GEN-PROBE INCORPORATED, a Delaware )
20   corporation,                        )
                                         )
21                          Counterdefendant. )
     _____ )
22
23
24
25
26
27
28

                                          1

The parties filed a joint motion in this patent suit asking the court to determine a motion by plaintiff Gen-Probe Incorporated (Gen-Probe) to compel defendant Becton-Dickinson (BD) to produce electronically stored information (ESI) in response to Gen-Probe's first set of requests for production (RFPs) served on January 6, 2010.  Gen-Probe wants BD to search its ESI under the existing ESI protocol and produce the ESI before the fact discovery cutoff.  BD asks this court to deny the motion as premature, or to defer ruling on it until either the parties or the court has resolved BD's request for a modification of the search terms in the ESI protocol, which would yield a smaller universe of documents for BD to review for production.

For the following reasons, the court **GRANTS** Gen-Probe's motion to compel.

<u>**RELEVANT FACTS**</u>

**ESI Protocol.**

Gen-Probe served its first set of RFPs on January 6, 2010.  BD responded on March 5, 2010, and agreed to produce many of the requested documents.  On June 2, 2010, in response to a discovery motion, and again on June 24, 2010, in an amended case management order, the court ordered the parties to comply with all scheduling order and production deadlines whether or not they had yet come to a final written agreement regarding the search and production of ESI.

In June 2010--before the parties had executed a written ESI protocol--BD began producing responsive documents.  Cobb Decl. ¶ 5.  It produced more documents in August, September, November and December, for a total of 406,855 pages produced in 2010.  *Id.*

Through the Fall of 2010, the parties met and conferred regarding allegations of deficient document productions.  In December 2010, Gen-Probe filed an ex parte application asking the court to intervene on the issue of finalizing a written ESI protocol.  The court asked for briefing from both parties.  In January 2011, the court issued an order encouraging the parties to reach an agreement on ESI since they were most familiar with the ESI and technology at issue.  If they could not reach a complete agreement regarding ESI, trial counsel and technical representatives were ordered to an in-person conference at the court to resolve the ESI protocol issue with the court's help.  The parties then negotiated their own ESI protocol and the court vacated the in-person conference.  The court entered the parties' agreed-upon ESI protocol as an order on February 15, 2011.

**ESI Production.**

Gen-Probe has served eight sets of RFPs on BD, totaling 254 requests.  Carroll Decl. ¶ 2.  BD has collected and processed more than 3,300,000 ESI documents.  Carroll Decl. ¶ 4.  In April 2011 it added five additional full-time attorneys dedicated to reviewing BD's ESI for production.  Carroll Decl. ¶ 5.  Through July 8, 2011, BD has incurred more than one million dollars in fees associated with the review and production of ESI.  Carroll Decl. ¶ 3.

BD says it has produced 53,960 ESI documents, amounting to 739,795 pages.[1]  Carroll Decl. ¶ 6. Gen-Probe says that of the documents BD produced, only 34,163 documents appear to be ESI.  Cobb Decl. ¶ 4.  Of those, Gen-Probe says that 373 documents are repetitive log files comprising 264,100 pages.  Cobb Decl. ¶ 4; Ex. 1.

Gen-Probe has searched, i.e. collected and processed, 4,044,599 ESI documents.  Cobb Decl. ¶ 30.  Gen-Probe reviewed 593,198 documents, of which 464,685 documents are ESI.  Cobb Decl. ¶ 27. As of August 16, 2011, BD produced 145,971 ESI documents.  Cobb Decl. ¶ 27.  Gen-Probe says that it has employed a team of document reviewers since July 2010 comparable to BD's team of reviewers.  Cobb Decl. ¶ 31.

**The Current Dispute.**

On June 6, 2011, Gen-Probe asked BD to set June 30, 2011 as a mutual deadline for production of ESI.  Swinton Decl. ¶ 2.  BD declined but said by that date it would provide an estimate of when it could complete its production of ESI responsive to Gen-Probe's first set of RFPs.  Swinton Decl. ¶¶ 4-5; Carroll Decl. ¶ 11.  On June 30, 2011, BD told Gen-Probe that it would not be able to review and produce its ESI before the deadline for completing fact discovery, set for December 2, 2011.  Swinton Decl. ¶ 6; Carroll Decl. ¶ 13.  BD estimates that there are at least 450,000 ESI documents left to review based on the existing protocol.  Carroll Decl. ¶ 15.  To complete reviewing the remaining 450,000 documents, BD says it must spend at least 10,000 attorney hours and an additional million dollars. Carroll Decl. ¶ 10.

/ / /

---

[1] According to Gen-Probe, BD's total production is 53,895 documents amounting to 717,137 pages.  *See* Cobb Decl. ¶ 5.

1     To address this issue, Gen-Probe offered for BD to provide an "ESI dump" of the 450,000

2     documents subject to blanket "Highly Confidential" designations and a clawback agreement.  Swinton

3     Decl. ¶¶ 9-12.  BD declined.  Swinton Decl. ¶ 12.  Instead, on July 14, 2011, BD proposed that the

4     parties modify the existing ESI protocol, which would yield a smaller universe of documents for BD to

5     review and produce.  Swinton Decl. ¶ 11; Carroll Decl. ¶ 15.  BD explained that it found many search

6     terms that identified several non-responsive documents, which slowed down BD's review and

7     production process.  Carroll Decl. ¶ 15.  Under this proposed modification, BD said it could produce the

8     responsive documents by mid-November, 2011.  *Id.*  Gen-Probe believes that this proposed modification

9     would result in a 68.2% reduction in potential documents to be reviewed, decreasing the potential

10    documents from 450,000 to 143,200.  Cobb Decl. ¶ 16.  BD did not identify how many documents

11    would be eliminated from review or production.  Counsel met and conferred on July 15, 2011, and Gen-

12    Probe rejected BD's offer.  Swinton Decl. ¶ 12; Carroll Decl. ¶ 16.

13    On July 21, 2011, BD again asked Gen-Probe if it would agree to a second proposal of revisions

14    to the ESI protocol.  Swinton Decl. ¶ 13; Carroll Decl. ¶ 19.  To consider the proposal, Gen-Probe asked

15    for a data sampling of eliminated documents that would show the effect of the proposed revisions.

16    Swinton Decl. ¶ 14.  Gen-Probe wanted "evidence that [BD's] proposed modifications do not exclude

17    documents that are responsive to Gen-Probe's Requests for Production or that are otherwise relevant to

18    any claim or defense in this action."  Carroll Decl. ¶ 19.  Specifically, Gen-Probe wanted a sampling of

19    5600 documents, or 350 documents for each eliminated search term.  Carroll Decl. ¶ 19; Cobb Decl. ¶

20    22.  Gen-Probe sought this data sampling because during negotiations of the ESI protocol, BD

21    represented it conducted significant data sampling to justify the parties' negotiations.  Swinton Decl. ¶

22    14.

23    BD did not give Gen-Probe the requested data sampling information.  Swinton Decl. ¶ 15.

24    Instead, BD asked for a meet and confer for the week of August 8, 2011 to consider an alternate data

25    sample procedure.  Carroll Decl. ¶ 21.  It also proposed that BD randomly select a general sample of 500

26    documents--not specific to any of the modified or excluded terms--to be excluded under its proposal.

27    Swinton Decl. ¶ 17; Carroll Decl. ¶ 24; Cobb Decl. ¶ 36; Carroll Supp. Decl. ¶ 9.  Meanwhile, Gen-

28    Probe had served on BD the shell for this joint motion.  Swinton Decl. ¶ 16; Carroll Decl. ¶¶ 22-23.

Gen-Probe rejected BD's proposed 500 document sample and declined the proposal to modify the ESI search protocol.  Swinton Decl. ¶ 18; Carroll Decl. ¶ 26.  Gen-Probe believes this second proposed modification would result in a 80.1% reduction in potential documents to be reviewed, decreasing the universe of documents from 450,000 to 89,500.  Cobb Decl. ¶ 17.  The proposal would  modify or eliminate 15 of 39 total search strings.  Cobb Decl. ¶ 34.  BD did not identify how many documents would be eliminated from review or production.  Swinton Decl. ¶ 13.

In sum, Gen-Probe argues that BD has made an "anticipatory breach" of the deadlines set forth in the court's second amended scheduling order, forcing Gen-Probe to seek an order compelling BD to produce all ESI documents responsive to Gen-Probe's first set of RFPs.  Gen-Probe also requests an in-person hearing on the issue.  BD argues that the issue is not ripe and that the parties, or the court, must first resolve the question of whether the ESI protocol will be modified.

## DISCUSSION

### Modification of ESI Protocol.

The Federal Rules allow for broad discovery in civil actions: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  This provision is liberally construed to provide wide-ranging discovery of information necessary for parties to evaluate and resolve their dispute.  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1995).

In opposing this motion, BD argues that following the operative ESI protocol causes "hits" on many irrelevant documents, and that the protocol should be modified to include fewer search terms.  BD proposed providing Gen-Probe with a 500 document sample to show the documents that would be excluded under its revised protocol.  BD would randomly select this sample from the entirety of documents to be excluded.[2]  Gen-Probe argues that a simple random sampling procedure would not show any confidence that the revised search terms would only exclude irrelevant documents, because (1) the data sample does not provide information as to which, if any, search terms are burdensome; and

---

[2]BD seems to endorse a simple random sampling procedure, which is used to obtain a sample where the population is homogeneous, or in other words, shares all the same attributes.  *See* http://www.evaluationwiki.org/index.php/Survey_Sampling (last visited Aug. 25, 2011).

1  (2) it uses statistical figures that are based on the underlying assumption that the collection of

2  documents are homogeneous.  Cobb Decl. ¶ 25.

3       In contrast, before agreeing to discuss the possibility of a revision to the ESI protocol, Gen-

4  Probe asked for a data sample of 5600 documents, or 350 documents for each eliminated search term.[3]

5  BD argues that the problem with this stratified sampling is that a document potentially excluded by a

6  modification to one term might still be captured by one of the other terms in the ESI search set.  Carroll

7  Supp. Decl. ¶ 5.

8       In reviewing the papers, this court finds that BD does not provide any substantiation that its

9  proposed data sample would show with sufficient confidence that the proposed modifications would

10  only eliminate non-relevant documents.  Consequently, the court rejects BD's data sample procedure.

11  Further, in light of BD's critique of Gen-Probe's proposed data sample, the court also rejects Gen-

12  Probe's proposal.

13       Given the lack of substantiation to show the confidence level in either of the proposed data

14  samples, along with the burden of consulting with statisticians, determining an appropriate data sample,

15  searching, reviewing and producing that data sample, and then negotiating any possible revisions to the

16  ESI protocol, this court finds that BD would be better served to concentrate on the review and

17  production of documents identified through the parties' negotiated ESI protocol rather than on

18  modifying the ESI protocol.  The parties took nearly one year to negotiate that protocol, and they

19  negotiated it with the benefit of data samples and compromises from both sides.  The court will not re-

20  open that issue nearly seven months after the negotiated protocol was entered as a court order, without

21  substantiation of confident data samples, and without, as explained below, sufficient evidence of undue

22  burden.

23  **Undue Burden in Review and Production of ESI.**

24       A court must limit discovery when "the burden or expense of the proposed discovery outweighs

25  its likely benefit, taking into account the needs of the case, the amount in controversy, the parties'

26  resources, the importance of the issues at stake in the litigation, and the importance of the proposed

27  _____

28      [3]Gen-Probe endorses stratified random sampling, which is a combination of independent samples used to obtain a representative sample from a population that has many characteristics.  *See* http://www.evaluationwiki.org/index.php/Survey_Sampling (last visited Aug. 25, 2011).

09cv2319 BEN (NLS)

1    discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii); *see Playboy Enterprises, Inc. v.*

2    *Welles*, 60 F. Supp.2d 1050, 1054 (S.D. Cal. 1999).  The party opposing discovery has the burden of

3    showing that discovery should not be allowed, and also has the burden of clarifying, explaining and

4    supporting its objections with competent evidence. *DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D.

5    Cal. 2002).

6        BD argues for a modified protocol because the burden under the existing ESI protocol--to review

7    450,000 documents and produce the responsive ones--is too great and not necessary.  In support, it cites

8    these facts: BD has collected and processed more than 3,300,000 ESI documents; BD has incurred more

9    than one million dollars in fees associated with the review and production of ESI; and to complete

10    review of the remaining 450,000 documents, BD anticipates needing more than 10,000 attorney hours

11    and one million dollars.  Comparatively, Gen-Probe collected and processed 4,044,599 documents,

12    reviewed 464,685 ESI documents and produced 145,971 responsive documents.

13        The court finds that the facts BD relies upon do not speak to undue burden but rather to the fact

14    that this is a large document case.  This is not surprising, given that this is a patent case with

15    approximately 140 asserted claims, resulting from multiple claims asserted under seven different

16    patents. *See* Sept. 15, 2010 Order, p.3. [Dkt. No. 77.] There are also numerous invalidity contentions and

17    prior art references.  While considerable, the amount of documents to be searched does not appear

18    unreasonable given the number of claims and defenses asserted, the nature of the case, the amount in

19    controversy and the intellectual property rights at stake in the litigation.  Further, BD's burden appears

20    no greater--and in fact, appears less--than the burden Gen-Probe undertook in collecting, searching,

21    reviewing and producing its responsive ESI documents.  Further, BD is a much larger multi-national

22    company compared to Gen-Probe, and presumably has greater resources to conduct the discovery.  The

23    court finds that BD's claim of undue burden lacks sufficient substantiation.

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

1

<u>**ORDER**</u>

2          For the foregoing reasons, the court **GRANTS** Gen-Probe's motion to compel.  BD shall

3    continue to engage in all efforts to produce ESI documents responsive to Gen-Probe's RFPs as soon as

4    practicable according to the existing ESI protocol, and in any event shall produce all responsive ESI

5    documents by <u>**October 14, 2011**</u>.

6          **IT IS SO ORDERED.**

7    DATED:  August 25, 2011

8

9                                        Hon. Nita L. Stormes
                                         U.S. Magistrate Judge
10                                       United States District Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv2319 BEN (NLS)