**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEN-PROBE INCORPORATED, a Delaware corporation,<br><br>　　　　　Plaintiff,<br>v.<br>BECTON, DICKINSON AND COMPANY, a New Jersey corporation,<br><br>　　　　　Defendant.<br>───────────────────────────<br>BECTON, DICKINSON AND COMPANY, a New Jersey corporation,<br><br>　　　　　Counterclaimant,<br>v.<br>GEN-PROBE INCORPORATED, a Delaware corporation,<br><br>　　　　　Counterdefendant. | Civil No. 09cv2319 BEN (NLS)<br>Civil No. 10cv0602 BEN (NLS)<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 20**<br><br>[Doc. No. 320] |

**I.     INTRODUCTION**

On March 20, 2012, Plaintiff Gen-Probe Incorporated ("Gen-Probe") and Defendant Becton, Dickinson and Company ("BD") submitted a joint motion to resolve a discovery dispute as to whether the attorney-client privilege applies to communications between Gen-Probe's outside patent prosecution counsel, Mr. Wydeven, and a third party, Mr. Toukan. [Doc. No. 254.] On April 6, 2012, the Court issued an Order finding that the attorney-client privilege applied to communications because Mr.

Toukan was the "functional employee" of Gen-Probe. [(the "Order"), Docket No. 273.]   On April 24, 2012, BD filed Objections to the Order [Docket No. 304] and on May 4, 2012 Gen-Probe filed a response to the Objections. [Docket No. 312.]¹   On April 12, 2012, BD conducted a deposition of Gen-Probe pursuant to Rule 30(b)(6) with Charles Cappellari, Gen-Probe's in-house Chief Intellectual Property Counsel, as the witness for Gen-Probe. (Mot. at 1.)  During the deposition, Gen-Probe's litigation counsel instructed the witness not to answer multiple questions, asserting that the answer to the questions would reveal privileged attorney-client communications.  On May 18, 2012, the parties filed the twentieth discovery dispute, currently before the court. [Docket No. 320.]  BD seeks to compel the answers to deposition questions, production of documents, and revisions to Gen-Probe's privilege logs.  Gen-Probe argues that the witness properly refused to answer the question, that all relevant documents have been produced, and no revision to the privilege logs is necessary.  On May 22, 2012, the Court ordered Gen-Probe to produce the Wyveden-Toukan communications for *in camera* review.  On May 25, 2012 Gen-Probe timely complied with the Court's Order.  The Court has now completed the *in camera* review of the documents produced.

This Court has already held that Mr. Toukan was the functional equivalent of an employee of Gen-Probe and that confidential communications made for the purpose of seeking legal advice are covered by the attorney client privilege.  The Court will not reconsider that ruling at this time.  BD now argues that the factual record shows that at least some of the communications at issue were made by Gen-Probe for the purpose of seeking an assignment of intellectual property rights from Mr. Toukan. BD further argues that communications for the purpose of obtaining an assignment of rights are not covered by the attorney-client privilege.  Gen-Probe counters that the discussion of an assignment is a routine part of a patentability investigation and does not vitiate the attorney-client privilege that covers documents exchanged primarily for the purpose of obtaining legal services in preparing a patent application.  After reviewing the documents in question, the Court finds that the primary purpose of the communications was to obtain an assignment of rights and not to convey information Mr. Toukan possessed by virtue of his work as a functional employee of Gen-Probe.  Accordingly, and for the following reasons, the Court Grants BD's request for an Order requiring production of the documents.

---

¹The Objections are still pending before the District Court Judge.

## II. RELEVANT BACKGROUND

In 1996, Gen-Probe contracted with RELA, Inc. ("RELA") to help Gen-Probe develop an automated nucleic acid detection system. Gen-Probe required RELA to maintain the confidentiality of its work product, and to acquire all intellectual property rights from its employees and contractors and assign these rights to Gen-Probe. RELA hired Mark Toukan as an independent contractor to work on this project, ("Project Ginny"). Everyone RELA assigned to work on Project Ginny was required to sign a standard form contractor agreement, requiring the worker to assign to RELA all rights to all property resulting from the agreement and refrain from divulging any confidential information. [Order at 2.] In 2002, one of Gen-Probe's outside patent attorneys, Richard Wydeven, contacted Mr. Toukan by email and phone. Mr. Wydeven stated that the communications were regarding a patentability investigation he was conducting. [Doc. No. 254-5, Wydeven Decl. ¶ 6.] Gen-Probe represented that none of their communications related to any of the Automation Patents asserted by Gen-Probe in this case. [*Id.* at ¶ 8.]

BD disputes both that the communications were for the purpose of seeking legal advice and that the communications do not relate to the patents in suit. BD has asserted that Mr. Toukan was a true inventor of the subject matter of the asserted Automation patents and that Gen-Probe's omission of Mr. Toukan as an inventor invalidates the patents. Thus, BD argues, information as to whether Gen-Probe sought an assignment of intellectual property rights is relevant to the claims and defenses in this litigation.

Neither side has extensively addressed the relevance of the documents sought. The Court's own *in camera* review reveals that Mr. Wydeven was seeking information about an application that became Patent Number 7,396,509 "Instrument for detecting light emitted by the contents of a reaction receptacle" ("the Luminometer Patent"). Although the Luminometer Patent is not one of the patents in suit, it is related to provisional patent application 60/083,927 and non-provisional patent application 09/303,030. The patents in suit also stem from these patent applications. [Wydeven Decl. ¶ 5.] BD argues that the luminometer module performs the detecting step recited in each asserted patent and that any assignment of rights sought for the Luminometer Patent would also apply to the patents in suit. The Court finds this to be a sufficient basis to deem the information relevant to the claims and defense in this

1  litigation, and that the information sought is reasonably calculated to lead to the discovery of admissible
2  evidence.

## III.  RELEVANT LEGAL PRINCIPLES

Discovery in civil actions in intentionally broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

The attorney-client privilege protects disclosure of communications between a client and his attorney. *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Whether the attorney-client privilege applies should be determined on a case-by-case basis. *See Upjohn Co.*, 449 U.S. at 396. The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. The party asserting attorney-client privilege has the burden of establishing all of the elements of the privilege. *See United States v. Plache*, 913 F.2d 1375, 1379 n.1 (9th Cir. 1990).

An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal advisor (8) unless the protection be waived.

*United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002).

## IV.  DISCUSSION

### A.  The Communications

Pursuant to Court order, Gen-Probe produced communications between Gen-Probe and Mark Toukan for *in camera* review. The Communications consist of: 1) an email from Mr. Wydeven to Mr. Toukan dated November 20, 2001; 2) a responsive email from Mr. Toukan to Mr. Wyverden dated December 19, 2002; 3) a Letter from Mr. Wydeven to Mr. Toukan dated December 13, 2002; 4) an

email from Mr. Wydeven to Mr. Toukan dated February 24, 2003; 5) an email from Mr. Toukan to Mr. Wydeven dated February 25, 2003; 6) an email from Mr. Wydeven to Mr. Toukan dated April 1, 2003; 7) an email from Mr. Wydeven to Mr. Toukan dated May 7, 2003; 8) two emails from Mr. Wydeven to Mr. Toukan dated May 8, 2003; 9) two emails from Mr. Toukan to Mr. Wydeven dated May 8, 2003; 10) two letters from Mr. Wydeven to Mr. Toukan dated June 24, 2003 (one is logged as attached to an email dated 6/27/03, but no such email was submitted.)

The court's review of the documents does not reveal any instance in which Mr. Wydeven was seeking information that Mr. Toukan gained by way of his employment on Project Ginny. The documents indicate that Mr. Wydeven sought to learn the extent of Mr. Toukan's involvement with what eventually became the Luminometer Patent and then sought an assignment of rights from Mr. Toukan.

**B.     The Communications Are Not Privileged**

The Court's review of the communications reveals that the subject of all communications was Gen-Probe's unsuccessful attempt to obtain an assignment of rights from Mr. Toukan for his work on the Ginny Project. Gen-Probe hired Mr. Wydeven as patent prosecution counsel. The Court has previously held that Mr. Wydeven's communications with RELA contractors were subject to the attorney client privilege because the RELA contractors were the functional equivalent of Gen-Probe employees. (Order at 5-6.) The Court accepted Gen-Probe's assertion on the privilege log that the communications related to "patent application" and "patent matters" and the declaration of Mr. Wydeven that he contacted Mr. Toukan to assist with his "assignment to investigate matters of patentability of various aspects of Project Ginny." (Order at 8, *quoting* Wydeven Decl. ¶ 7.) The Court did not, as Gen-Probe implies, rule that the communications were privileged without reference to whether they were confidential communications for the purpose of seeking legal advice.[2] The Court ruled, based upon the privilege logs and declaration of Mr. Wydeven, the communications were made because Mr. Toukan had information related to a patentability investigation of Project Ginny work that might be separately patented from the Automation Patents. Specifically, Mr. Wydeven declared that the documents withheld by Gen-Probe under claim of privilege are:

---

[2]Instead, the Court specifically noted that in *Genentech, Inc. v. Trustees of Univ. of Penn*, 2011 L 5079531 (N.D. Cal. Oct. 24, 2011) the court had found "no privilege because there were no confidential communications made for the purpose of seeking legal advice." [Order at 8, n.2]

> the confidential, privileged communications I exchanged with Mr. Toukan in connection with my investigation into the patentability of the separate aspect of Project Ginny which I was investigating at the time in 2002, extending into 2003. None of those communications refer or relate to any of the Automation Patents asserted by Gen-Probe in this case.

[Wydeven Decl. ¶ 8, Docket No. 254-5.] In the Order, the Court stated; "Here, Mr. Toukan had information related to a patentability investigation . . . .This information is precisely the type covered by the attorney-client privilege." [Order at 6.]

After reviewing the documents *in camera*, the Court has determined that, while the communications may have been "in connection with" the investigation, they were not in aid of the investigation. Instead, as alleged by BD, the communications were an effort by Gen-Probe to convince Mr. Toukan to assign his rights in the invention sought to be patented. As such, the communications were not confidential communications for the purpose of securing legal advice. In fact, Mr. Toukan felt compelled to engage legal counsel to review Gen-Probe's request to assign his rights, which further supports the conclusion that the communications were not for the purpose of providing Gen-Probe with information about Project Ginny.

Gen-Probe argues that discussion of an "assignment" does not vitiate the attorney-client privilege that attaches to a communication in aid of a patentability investigation, and that it is improper to dissect a document into component parts in order to break privilege for part of a document. [Mot. at 11, *citing In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805-06 (Fed. Cir. 2000). The Court agrees that inclusion of the issue of assignment of rights would not destroy the attorney-client privilege of communications primarily for the purpose of obtaining legal services. The Court does not agree, however, that communications primarily for the purpose of obtaining an assignment of rights are for the purposes of obtaining legal services. The *Spalding* court found: " It is enough that the overall tenor of the document indicates that it is a request for legal advice or services." *In re Spalding*, 203 F.3d at 806.

Here, there is no evidence that the overall tenor of any of the communications produced to the Court indicates that the communications were in furtherance of the provision of legal services. Rather, the overall purpose of the communications was to obtain an assignment of rights. There is no evidence that the communications were for evaluating or prosecuting a patent or for a patentability investigation. *See Auotmed Techs. v. Knapp Logistics & Automation, Inc.*, 382 F.Supp.2s 1372 (N.D. GA 2005)

(distinguishing *Spalding* and finding Invention Record and Assignment Form not privileged in the absence of evidence that it was for the purpose of patent evaluation or prosecution).  Thus, the communications are not protected by the attorney-client privilege.

## V.   CONCLUSION

For the foregoing reasons, **It Is Hereby Ordered**:

1. Gen-Probe shall, no later than **5:00 p.m. Pacific Time on May 30, 2012,** produce to BD all documents produced to the Court for *in camera* review, including the documents that best approximate the attachments to the December 13, 2002 letter from Mr. Wydeven to Mr. Toukan;

2. Gen-Probe shall identify, by **12:00 p.m. Pacific Time on May 31, 2012**, all communications in its current privilege logs concerning the subject of an assignment of Mr. Toukan's rights in any patent, application, or invention; and

3. Gen-Probe shall make Mr. Cappellari available for further deposition no later than **June 29, 2012**, to answer all questions about Gen-Probe's communications with Mr. Toukan that relate in any way to Gen-Probe's attempt to obtain an assignment of rights from Mr. Toukan.

**IT IS SO ORDERED.**

DATED:  May 30, 2012

*Nita L. Stormes*
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court