1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   GEN-PROBE INCORPORATED,                    CASE NO. 09-cv-2319 – BEN (NLS)

12                              Plaintiff,      **ORDER OVERRULING GEN-
                                                PROBE'S OBJECTIONS TO MAY
13          vs.                                 30, 2012 ORDER RESOLVING
                                                JOINT MOTION FOR
14                                              RESOLUTION OF DISCOVERY
                                                DISPUTE (TWENTIETH
15   BECTON DICKINSON AND COMPANY,              DISPUTE)**

16                              Defendant.      **[Doc. No. 359]**

17

18          This is a patent infringement action.  Plaintiff Gen-Probe Incorporated ("Gen-Probe") alleges

19   that Defendant Becton Dickinson & Company ("BD") infringes its Automation Patents. Presently

20   before the Court are Gen-Probe's objections to Magistrate Judge Stormes' May 30, 2012 Order

21   resolving the parties' joint motion for resolution of a discovery dispute ("May 30, 2012 Order").  BD

22   filed a response to the objections.  Having considered the parties' arguments, and for the reasons set

23   forth below, the Court **OVERRULES** Gen-Probe's objections to the May 30, 2012 Order.

24                              **BACKGROUND**

25          As Judge Stormes' Order explains, Gen-Probe contracted with RELA, Inc. to develop an

26   automated nucleic acid detection system in 1996.  RELA hired Mark Toukan as an independent

27   contractor to work on the project.  Gen-Probe claims that everyone working on the project was

28   required to assign their rights to anything resulting from the project to RELA, although a copy of Mr.

Toukan's contact assigning his rights cannot be located.  In 2002, one of Gen-Probe's outside patent attorney's, Richard Wydeven, contacted Mr. Toukan about his work on the project by email and phone.  These communications are the subject of this discovery dispute.

This dispute was initially brought before the Magistrate Judge in the parties' fifteenth discovery dispute.  Judge Stormes found that the communications were subject to the attorney-client privilege because Mr. Toukan was the equivalent of an employee.  In reaching this conclusion, Judge Stormes accepted Gen-Probe's assertion in its privilege log that all the communications related to "patent application" and "patent matters" and Gen-Probe's assertion that Mr. Wydeven communicated with Mr. Toukan about matters of patentability.

The issue arose again during the deposition of Gen-Probe's Chief Intellectual Property Counsel.  The witness was instructed not to answer numerous questions as protected by the attorney-client privilege.  In response, the parties filed their twentieth discovery dispute in which BD sought to compel the production of communications between Mr. Wydeven and Mr. Toukan.  On May 22, 2012, Judge Stormes ordered Gen-Probe to produce the Wyveden-Toukan communications for *in camera* review.  After conducting an *in-camera* review, Judge Stormes found that the primary purpose of the communications was to obtain an assignment of rights from Mr. Toukan and ordered the documents produced.  Gen-Probe objects to that order and seeks to reestablish the privilege over those communications.

Gen-Probe asserts that the communications concern only a patentability investigation conducted to provide legal advice to Gen-Probe and the communications are protected by the attorney-client privilege.  BD claims that the communications were an attempt to obtain an assignment of Mr. Toukan's rights as an inventor and that Mr. Toukan is in fact an omitted inventor of a component of the Automation Patents, making the communications relevant to Gen-Probe's standing and BD's invalidity defense.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) provides that whenever a magistrate judge issues a written order deciding a non-dispositive pretrial matter, "[a] party may serve and file objections to the order within 14 days after being served with a copy."  "The district judge in the case must consider

1   timely objections and modify or set aside any part of the order that is *clearly erroneous* or is *contrary*

2   *to law*." FED. R. CIV. P. 72(a) (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A).  The magistrate

3   judge's decision on non-dispositive matters is entitled to "great deference" by the district court.  *See*

4   *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001).  To conclude that a magistrate

5   judge's decision was clearly erroneous, the district court must arrive at a "'definite and firm conviction

6   that a mistake has been committed.'" *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F.

7   Supp. 2d 1164, 1168 (C.D. Cal. 1998) (citation omitted), *aff'd*, 216 F.3d 1082 (9th Cir. 2000); *see also*

8   *Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602,

9   622 (1993).

10                                              **DISCUSSION**

11          Gen-Probe objects to Judge Stormes' finding that the overall purpose of the communications

12   between Mr. Wydeven and Mr. Toukan was to obtain an assignment of rights rather than to obtain

13   legal services.  In determining whether the attorney-client privilege applies, "the central inquiry is

14   whether the communication is one that was made by a client to an attorney for the purpose of obtaining

15   legal advice or services." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000).

16    As Judge Stormes acknowledged, just the inclusion of the assignment of rights in a document does

17   not destroy the privilege, if the overall tenor of the document indicates a request for legal advice or

18   services.  *Id.* at 806.

19          After reviewing the communications *in camera*, Judge Stormes determined that the

20   communications were an effort by Gen-Probe to convince Mr. Toukan to assign his rights in the

21   invention and as such, were not confidential communications for the purpose of securing legal advice.

22   As Judge Stormes explained, the communications were about obtaining Mr. Toukan's assignment of

23   his rights as an inventor.  Gen-Probe's claim that Mr. Toukan would have already assigned his rights

24   as part of his work for RELA does not change the substance of the communications.  The

25   communications focus almost entirely on obtaining an assignment of Mr. Toukan's rights as an

26   inventor.  The initial email seeks to confirm Mr. Toukan's contribution to the invention of the

27   luminometer and every following communication seeks an assignment of Mr. Toukan's rights.

28   ///

1    Having reviewed Gen-Probe's objections, the Court concludes that Judge Stormes'

2  determination was neither "clearly erroneous" nor "contrary to law."

3                                    **CONCLUSION**

4    For the foregoing reasons, Gen-Probe's objections to the May 30, 2012 Order are

5  **OVERRULED**.

6    **IT IS SO ORDERED.**

7

8  **DATED:  July 18, 2012**

9                                    _____

10                                   **Hon. Roger T. Benitez**
                                     **United States District Judge**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -