# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEN-PROBE INCORPORATED, a Delaware corporation,<br><br>Plaintiff,<br>v.<br><br>BECTON, DICKINSON AND COMPANY, a New Jersey corporation,<br><br>Defendant. | Civil No. 09cv2319 BEN (NLS)<br>Civil No. 10cv0602 BEN (NLS)<br><br>ORDER RESOLVING JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NUMBER 21 AND DENYING MOTION TO FILE DOCUMENTS UNDER SEAL<br><br>[Docket Nos. 454, 453.] |
| BECTON, DICKINSON AND COMPANY, a New Jersey corporation,<br><br>Counterclaimant,<br>v.<br><br>GEN-PROBE INCORPORATED, a Delaware corporation,<br><br>Counterdefendant. | |

**I.   INTRODUCTION AND BACKGROUND**

On March 20, 2012, Plaintiff Gen-Probe Incorporated ("Gen-Probe") and Defendant Becton, Dickinson and Company ("BD") submitted a joint motion to resolve a discovery dispute as to whether the attorney-client privilege applies to communications between Gen-Probe's outside patent prosecution counsel, Mr. Wydeven, and a third party, Mr. Toukan. [Doc. No. 254.] The factual background of the Wydeven-Toukan communication has been recounted in detail in the Court's prior orders and will not

be repeated here. On April 6, 2012, the Court issued an Order finding that the attorney-client privilege applied to communications because Mr. Toukan was the "functional employee" of Gen-Probe. [Docket No. 273, (the "First Toukan Order").] On April 24, 2012, BD filed Objections to the First Toukan Order [Docket No. 304] and on May 4, 2012 Gen-Probe filed a response to the Objections. [Docket No. 312.]

On May 18, 2012, the parties filed the twentieth discovery dispute. [Docket No. 320.] BD sought to compel: 1) answers to deposition questions; 2) production of documents; and 3) revisions to Gen-Probe's privilege logs; all in relation to the Wydeven-Toukan communications. On May 22, 2012, the Court ordered Gen-Probe to produce the Wydeven-Toukan communications for *in camera* review. [Docket No. 337.] On May 30, 2012, the Court granted BD's Motion to compel further production and ordered Gen-Probe to: 1) produce to BD the documents submitted for *in camera review*; 2) to identify all communications in its current privilege logs concerning the subject of an assignment of Mr. Toukan's rights in any patent, application, or invention; and 3) make in house counsel Mr. Cappellari available for further deposition to answer all questions about Gen-Probe's communications with Mr. Toukan that relate in any way to Gen-Probe's attempt to obtain an assignment of rights from Mr. Toukan. [Docket No. 346 at 7 (the "Order").] Gen-Probe timely produced documents and revisions to the privilege logs and timely produced Mr. Cappellari for deposition. On June 13, 2012, Gen-Probe filed objections to the Second Toukan Order. On July 18, 2012, the District Court overruled Gen-Probe's Objections to the Second Toukan Order. [Docket No. 408.]

On August 15, 2012, the parties filed the Twenty-First Joint Motion for Resolution of a Discovery Dispute, which is currently before the Court. [Docket No. 454.] BD now seeks to compel Gen-Probe to: 1) produce "draft" letters from Richard Wydeven to Mark Toukan concerning an assignment of Toukan's patent rights; 2) produce Richard Wydeven for deposition based on the alleged inability or refusal of Gen-Probe's 30(b)(6) designee, Charles Cappellari, to answer questions at his deposition; and 3) amend its privilege logs to identify communications concerning Mark Toukan. On August 21, 2012, the Court Ordered Gen-Probe to produce the draft letters for *in camera* review. On August 24, 2012, Gen-Probe timely lodged the documents with chambers. The Court has reviewed the documents and, for the following reasons, determines that the one of the drafts is not protected and the other two drafts are protected by the attorney-client privilege.

## II. LEGAL STANDARDS

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *U.S. v. Richey*, 632 F.3d 559, 556 (9th Cir. 2011), *citing Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677 (1981).

> The attorney-client privilege exists where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011)(citations omitted.)  Drafts of a document that will ultimately be distributed in a manner that would waive privilege are not necessarily outside of the privilege.  A party:

> may assert attorney-client privilege for undistributed documents, such as drafts of communications which were created with the intention of confidentiality, even where the final distribution of the draft might constitute a waiver of the privilege.

*Helm v. Adlerwoods Group, Inc.* 2010 WL 2951871 n2 at *2 (N.D. Cal July 27, 2010); *see also Ideal Elec. Co v. Flowserve Corp*, 230 F.R.D. 603, 607 (D. Nev. 2005)(drafts of affidavit to be submitted to court remain privileged); *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2nd Cir. 1984)(fact that certain information might be disclosed does not foreclose application of attorney client privilege so long as communications were intended to be confidential); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 85 (W.D.N.Y. 2011) (a draft of a document intended for publication can be covered by the attorney-client privilege, "provided that the draft documents demonstrated an intent to seek confidential legal advice on their content.")

## III. DISCUSSION

### A. Certain Drafts of the Toukan Letter Are Privileged

BD first argues that the drafts cannot be protected by the attorney-client privilege because they are not "actual communications." (Mtn at 3.)  This argument is not persuasive because the communication took place between Mr. Wydeven as attorney and Mr. Cappellari as client.  The question is whether the communications were intended to be confidential.  Gen-Probe has submitted the declaration of Mr. Wydeven declaring that his communications with Mr. Cappellari were for the purposes of securing legal advice and were intended to be kept confidential. [Docket No. 454-3 at ¶3.]

The Court has reviewed the drafts and finds no indication that the communications between Mr. Wydeven and Mr. Cappellari were ever intended to be disclosed. Accordingly, the communications remain protected by the attorney client privilege.

The next question is whether the drafts reveal those confidential communications. "[I]t is important to bear in mind that the attorney-client privilege protects communications rather than information; the privilege does not impede disclosure of information except to the extent that disclosure would reveal confidential communications" *In re Grand Jury*, 731 F.2d at 1037. Gen-Probe claims the drafts "reflect specific, confidential attorney-client communications between Mr. Cappellari and myself regarding the substance of those drafts and potential edits and revisions to each." [Docket No. 454-3, Wydeven Decl. ¶3.] Gen-Probe argues that the drafts are privileged because they "could directly and indirectly reveal the substance of privileged communications between Mr. Wydeven and Mr. Cappellari." [Motion at 11.] The Court has reviewed the three draft documents and cannot entirely agree with Gen-Probe.

### 1. The June 24, 2003 Draft is Not Privileged

The only change between the letter sent to Mr. Toukan and the draft dated June 24, 2003 is that the draft is not on letterhead. The lack of letterhead on a draft does not reveal, either directly or indirectly, any privileged communication. Accordingly, the June 24, 2003 Draft is not privileged and must be produced.

### 2. The June 4, 2003 and June 6, 2003 Drafts Are Privileged

Gen-Probe argues that the drafts directly reveal the substance of privileged communications. The June 4, and June 6, 2003 drafts are not identical to the letter as sent. The two older drafts, however, do not include any handwritten notes or any other indicia that parts of the drafts were intended as a private discussion between Mr. Wydeven and Mr. Cappellari. In short, the drafts do not directly reveal the substance of any conversation between Mr. Wydeven and Mr. Cappellari.

Gen-Probe also argues that the way in which the original draft was revised to result in the final letter will indirectly reveal the privileged conversations between Mr. Wydeven and Mr. Cappellari. Because the letters are not identical, the substance of the conversations between Mr. Wydeven and Mr. Cappellari could be indirectly disclosed by the disclosure of the earlier drafts. Accordingly, these drafts

are privileged unless there is proof that the conversations were not intended to be confidential or have been disclosed.

There are no facts before the Court that would suggest that Mr. Wydeven and Mr. Cappellari did not intend the changes to the draft letters to be kept confidential. *See Ideal Elec. Co. v. Flowserve Corp.*, 203 FR.D. 603, 607 (D. Nev. 2005)(drafts contained communications as to how facts should be presented and were, therefore, privileged.)[1]  Similarly, there are no facts that suggest that Gen-Probe has waived the privilege that applies to the confidential communications from Mr. Cappellari to Mr. Wydeven. Accordingly, the June 4, and June 6, 2003 drafts remain protected by the attorney-client privilege.

**B.     Deposition of Mr. Wydeven Is Not Warranted**

BD seeks to compel Gen-Probe to produce Mr. Wydeven for deposition testimony. As part of the 20th Discovery Motion, BD sought to re-open the deposition of Mr. Cappellari in his capacity as a designee for Gen-Probe under Fed. R. Civ. P. 30(b)(6). In the May 30, 2012 Order Resolving Joint Motion for Determination of Discovery Dispute No. 20, the Court Ordered: "Gen-Probe shall make Mr. Cappellari available for further deposition no later than June 29, 2012, to answer all questions about Gen-Probe's communications with Mr. Toukan that relate in any way to Gen-Probe's attempt to obtain an assignment of rights from Mr. Toukan." [Docket No. 346.] Thus, the Court awarded BD the exact relief it sought.

1.     Mr. Cappellari Appropriately Prepared For the Deposition

BD now claims that it should be allowed to depose Mr. Wydeven because Mr. Cappellari's knowledge came from a discussion with Mr. Wydeven. As Gen-Probe argues, BD knew when it requested to re-open Mr. Cappellari's deposition that Mr. Wydeven was the only person who communicated with Mr. Toukan on behalf of Gen-Probe. Thus, it should not be any surprise to BD that Mr. Cappellari would gain his knowledge of the communications from Mr. Wydeven.

BD next argues that Mr. Cappellari should have been better prepared. Mr. Cappellari testified that he spent one and half to two hours talking to Mr. Wydeven, reviewed documents, and discussed the

---

[1]After an *in camera* review, the Magistrate Judge in that case found: " specific privileged communications between [client] and counsel, such as written comments by both, were included in the drafts." Here, there are no such overt indicia of privileged communications.

matter with litigation counsel. [Cappellari Depo. Tr., Ex. D at 260.]  This preparation appears to be a reasonable response to the requirements of Rule 30(b)(6).  BD asserts that Mr. Cappellari did not know the answers to questions that he had not discussed with Mr. Wydeven.  BD provides several examples, but as discussed below, most of the examples do not fall within the subject matter ordered by the court.

First, Mr. Cappellari could not answer specific questions about the functionality of the luminometer developed by Mr. Toukan. [Ex. D at 275.] The Court ordered that questions about Gen-Probe's communications with Mr. Toukan "that relate in any way to Gen-Probe's attempt to obtain an assignment of rights from Mr. Toukan."  Gen-Probe's specific beliefs about the functionality of the luminometer do not fall within the category of information ordered by the court.

Second, BD refers to an answer on page 279 of the deposition transcript indicating lack of knowledge.  The court was not provided with page 278 of the transcript so it is impossible for the court to determine whether the questions asked fell within the subject of the Order.   Similarly, BD points to Mr. Cappellari's failure to answer a question at the top of page 303, but without page 302 there is no evidence that the question fell within the parameters of the Order. Accordingly, neither provides any support for the allegation that Mr. Cappellari was not adequately prepared to answer questions as ordered by the court.

Third, BD refers to a series of questions on pages 283-284 of the transcript asking whether: Wydeven and Toukan discussed if the luminometer was patentable or prior art to the luminometer and if Gen-Probe had already drafted claims relating to the luminometer at the time of the November 19, 2002 phone call.  Neither of these subjects directly relate to the attempt to obtain an assignment of rights and Mr. Cappellari's inability to answer these questions does not provide any reason to re-open the deposition.

Fourth, BD refers to questions on pages 299-300 of the deposition transcript.  Mr. Cappellari was unable to answer whether Mr. Wydeven had an electronic copy (in addition to the hard copy produced) of the assignment sent to Mr. Toukan and of the set of claims sent to Mr. Toukan. [Ex. D. at 300, 304.] Whether Mr. Wydeven had electronic copies of documents in addition to hard copies is not directly related to the communications with Mr. Toukan.

Fifth, Mr. Cappellari was unable to answer the question of how Mr. Wydeven concluded that the

assignment letter in the files was the closest approximation of the letter sent to Mr. Toukan. Similarly, Mr. Cappellari was unable to answer the question of why Mr. Wydeven believed that a set of claims produced are the set of claims sent to Mr. Toukan. [Ex. D. at 304]. While these two questions do fit within the subject matter ordered by the court, they do not constitute a sufficient failure to warrant a deposition of Mr. Wydeven.

### 2.  Wydeven-Cappellari Confidential Communications Remain Privileged

BD next argues that Gen-Probe improperly refused to answer questions about communications between Mr. Wydeven and Mr. Cappellari. BD claims that it was improper for Gen-Probe to object to questions asking about conversations between Mr. Wydeven and Mr. Cappellari during the 2002-2003 time frame. BD further argues that Gen-Probe cannot allow questions about what Wydeven told Cappellari in 2012 but object to questions about earlier discussions. BD is mistaken.

It was entirely appropriate for Gen-Probe to allow Mr. Cappellari to answer questions about his communications with Mr. Wydeven that were in order to prepare for the 30(b)(6) deposition as those communications were not intended to be confidential. As explained above, the conversations between Mr. Wydeven and Mr. Cappellari are protected by the attorney-client privilege. Thus, it was appropriate for Gen-Probe to instruct Mr. Cappellari to not to reveal the substance of his communications with Mr. Wydeven in 2002-2003.

The Order required Gen-Probe to produce Mr. Cappellari to answer questions "about Gen-Probe's communications with Mr. Toukan that relate in any way to Gen-Probe's attempt to obtain an assignment of rights from Mr. Toukan." [Docket No. 346.] The Order did not require Mr. Cappellari to answer all questions about his communications with Mr. Wydeven or all questions that in any way related to Mr. Toukan. Moreover, allowing a deposition of Mr. Wydeven would not change the privilege analysis. Thus, Mr. Wydeven would be allowed to refuse to answer the same questions for the same reason.

In short, there is no need to allow a deposition of Mr. Wydeven. Mr. Cappellari was adequately prepared to answer the questions as ordered by the Court. Gen-Probe appropriately instructed Mr. Cappellari not to answer questions that would reveal privileged communications with Mr. Wydeven. Mr. Wydeven could also appropriately refused to answer questions about his privileged communications

with Mr. Cappellari. While it is possible that Mr. Wydeven might have some information in addition to that presented by Mr. Cappellari, that does not entitle BD to depose Mr. Wydeven. BD asked for a further deposition of Mr. Cappellari with full knowledge that Mr. Wydeven was the only person who communicated with Mr. Toukan on behalf of Gen-Probe. Having received all that it sought, BD is entitled to no more.

### C.     Further Revisions to Privilege Log Are Not Warranted

BD argues that Gen-Probe should be required to produce a revised version of the Privilege Log because the Order "clearly instructed Gen-Probe to identify all communications 'concerning the subject of an assignment of Mr. Toukan's rights in any patent.'" [Mtn. at 7, quoting the Order.]   Gen-Probe identified 43 entries in the privilege logs that related to an assignment from Mr. Toukan. Gen-Probe then produced 37 of those documents. [Docket No. 454-4, Carroll Declaration at ¶¶5-6.][2]

BD asked Gen-Probe to supplement 67 entries identifying communications between Mr. Cappellari and Mr. Wydeven described only as "concerning patent matters." Gen-Probe supplemented the 67 entries by stating that each entry "does not relate to Mr. Toukan's rights in any patent, application or invention." [Mtn at 7, quoting Exhibit F, June 22, 2012 Log.] BD now argues that Gen-Probe's supplementation is inadequate because it does not disclose communications that concern Gen-Probe's knowledge of Mr. Toukan's work, including his inventive contributions or non-employee status. Gen-Probe counters that it has done all that the court has ordered and then more.

The Order required Gen-Probe to identify all documents concerning an assignment of Mr. Toukan's rights. BD argues that Gen-Probe's knowledge of Mr. Toukan's work, including his inventive contributions and non-employee status, fall within the subject matter "of an assignment of Mr. Toukan's rights in any patent." In fact, BD's final statement in the motion is: "BD is entitled to discover the extent of Gen-Probe's awareness of Mr. Toukan's work." [Mtn at 20.] BD argues for too broad a construction. The Order required identification of documents relating to an assignment of rights because the Court found that Gen-Probe has improperly claimed privilege over communications between Mr. Wydeven and Mr. Toukan that related to an assignment of rights. In order to remedy this

---

[2]The three draft letters at issue in this motion were not produced. Neither side has identified the other three documents withheld.

improper claim of privilege, the Court ordered supplementation of the privilege log to identify communications relating to an assignment of rights by Mr. Toukan. The Court did not require Gen-Probe to identify all documents relating to Mr. Toukan's work or to Gen-Probe's knowledge of Mr. Toukan's work. In short, Gen-Probe has complied with the Order and no further supplementation is necessary.

### D. Motion to File Documents Under Seal Lacks Sufficient Support

The parties originally sought leave to file under seal: the Joint Motion; Exhibits 1 and 3 to the Swinton Declaration; and Exhibits B through H of the Carroll declaration. The parties stated that all these documents contain material that has been designated as "confidential or "highly confidential" under the Protective Order in this case. The Court noted the request to seal appeared to be overbroad and Ordered any party seeking to file any part of the motion under seal to file further support for the Motion to Seal no later than August 27, 2012. Both sides filed responses stating that they no longer wished to file any part of the motion under seal. Accordingly, the Motion to Seal is DENIED.

## IV. CONCLUSION

Good Cause Appearing, It Is Hereby Ordered that:

1. Gen-Probe shall, no later than **September 7, 2012**, produce the June 24, 2003 draft of the Toukan letter;
2. The June 4, 2003 and June 6, 2003 drafts are protected by the attorney-client privilege and Gen-Probe shall not produce the earlier drafts;
3. Gen-Probe shall, no later than **September 7, 2012**, produce a revised version of the December 2011 privilege log that separately identifies all drafts of communications to Mr. Toukan; and
4. The Motion to Seal is Denied.

IT IS SO ORDERED.

DATED: August 29, 2012

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court